# UPTON MILL & ELEVATOR COMPANY v. BALDWIN FLOUR MILLS AND ANOTHER.[1]

### November 19, 1920.

### No. 21,926.

**Statute of frauds — memorandum of sale — letter quoted insufficient.**

1. There may be a sufficient compliance with the provisions of the statute of frauds (section 4, c. 465, Laws 1917), relating to a note or memorandum of a contract of sale, if the party to be charged writes a letter to the opposite party admitting the contract and repudiating its obligation, but the letter of the defendant set out in the opinion is not such an admission.

**Construction of statute of frauds.**

2. The right to invoke the statute of frauds as a defense is not regarded with disfavor, nor is the statute to be deemed obnoxious because of the consequences which sometimes follow its application.

**Statute of frauds — signature of defendant insufficient to charge him.**

3. The printed signature of the defendant at the bottom of a blank confirmation of sale slip, which had been filled out by one of his em-

[1]Reported in 179 N. W. 904.

ployees, was not sufficient to charge him under the statute of frauds, the signature being,

"Baldwin Flour Mills,

By ――――――."

defendant not having signed his name on the blank line after the word "By."

Action in the district court for Hennepin county to recover $2,500 for breach of contract. The answer specifically denied that defendants made or subscribed to any contract of sale with plaintiff or that any part of the goods, wares and merchandise alleged in the complaint had been delivered or accepted by plaintiff, or that any part of the alleged purchase price had ever been paid. The case was tried before Leary, J., who at the close of the testimony granted defendant's motion for a directed verdict. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*Daniel F. Foley,* for appellant.

*C. E. Purdy,* for respondent.

LEES, C.

Action to recover damages for breach of an alleged contract of sale. At the conclusion of the evidence the court directed a verdict in defendant's favor, and plaintiff appeals from an order denying its motion for a new trial.

Plaintiff is a dealer in flour and feed in Minneapolis. Defendant operates certain flour mills in western Minnesota and maintains an office in Minneapolis. The complaint alleged that on December 20, 1918, a contract of sale was made, under which plaintiff purchased and defendant sold five carloads of flour and feed at a stipulated price, and that defendant had breached the contract to plaintiff's damage in the sum of $2,500. The defense was that the alleged contract of sale was invalid by reason of the statute of frauds. It appeared that no part of the purchase price was paid and that none of the flour or feed was delivered. To take the case out of the operation of the statute, plaintiff relied on letters and memoranda, which it asserts complied with the requirements of section 4, c. 465, p. 768, Laws 1917, respecting a

note or memorandum of the contract.  A letter from plaintiff to defendant was introduced in evidence.  It reads:

> "Minneapolis, Minn.
> Dec. 20th, 1918.
>
> D. M. Baldwin Flour Mills Co.,
>   613 Metropolitan Life Bldg.,
>   City.
> Gentlemen:
>   We are pleased to confirm purchase of you today of your Mr. Carlson of five split cars—each to contain 100 barrels of flour at $10.60 per barrel basis 98s, 10 tons of bran, and 10 tons shorts basis government prices—all F. O. B. Minneapolis for January shipment.
>   Kindly confirm and oblige,
> Yours very truly,
>                 Upton Mill & Elevator Co.
>                     By G. A. Carlson.
>                 Received Dec. 21, 1918.
>                     Dwight M. Baldwin."

Defendant's reply was also introduced in evidence.  It reads:

> "Minneapolis, Dec. 21, 1918.
>
> Upton Mill & Elevator Co.,
> Minneapolis, Minn.
> Gentlemen:
>   Upon my return from Graceville, Minn., this morning I find your letter of Dec. 20th, requesting confirmation of an order of flour and feed, about which you talked with Mr. Carlson by telephone yesterday.
>   Please be advised we cannot confirm sale to you as requested.  We were not in position to furnish or offer these goods as specified and Mr. Carlson was not authorized to make any such sale.
> Yours truly,
>                 Dwight M. Baldwin."

1. Plaintiff contends that the two letters constitute a sufficient memorandum of the sale contract to take it out of the operation of the statute.  The first letter contains a statement of all the essential terms of a contract of sale and, if defendant had given the confirmation which

plaintiff requested, there would be no doubt that the statute had been complied with. The contention advanced is that by his letter defendant admits the making of, but repudiates, the contract. If that is the proper interpretation of the letter, there is authority to support the proposition that there has been a sufficient compliance with the statute. Browne, St. of Frauds, § 354a; Reed, St. of Frauds, § 394; Williston, Sales, § 106; Mechem, Sales, § 428. The doctrine may be thus stated: If the writer of a letter, after reciting the terms of the bargain, goes on and repudiates it or countermands an order he admits he gave, and the terms of which are sufficiently stated or referred to, such letter may be a sufficient memorandum to satisfy the requirements of the statute. We are unable, however, to spell out of defendant's letter an admission that a contract of sale had actually been made. He refers to the transaction of December 20 as an order for flour and feed and refuses plaintiff's request for a confirmation of the alleged sale. As reasons for not accepting the order, he states that he cannot furnish the flour and feed ordered and that Carlson had no authority to make a sale. Under the statute one cannot be charged as the seller of goods although all the terms of the sale are set forth in a letter written by the buyer, unless his letter in reply contains an admission that a contract was actually made. We find no such admission in defendant's letter, which must be read in connection with the letter from plaintiff asking defendant to confirm what plaintiff evidently understood to be a sale agreed upon by Carlson, as defendant's representative. The request was a recognition by plaintiff that the agreement would be unenforceable unless confirmed in writing by defendant. Defendant's reply refers to a conversation over the telephone between plaintiff and Carlson as an order given by plaintiff, and uses the word "sale" in connection with his refusal of the requested confirmation and his reasons for refusing. If the second paragraph in defendant's letter is disconnected from the first and read alone, it tends to support plaintiff's contention. But the letter must be read as a whole and when so read is not fairly open to the construction plaintiff seeks to place upon it. We think the language used falls short of an unequivocal admission by defendant that a sale had in fact been made, and hence he cannot be charged upon the alleged contract.

2. Plaintiff asserts that the purpose of the statute is not to defeat honest litigants, but to protect them from fraud and perjury, and inferentially that a defense founded on the statute is not to be looked upon with favor. In other words, we are asked to treat the statute as an obnoxious one and to restrict its operation by a rigid construction. Such was the attitude assumed by this court in the early case of Phipps v. McFarlane, 3 Minn. 61 (109), 74 Am. Dec. 743. But our later decisions evince no hostility towards a litigant who pleads the statute as a bar. Cram v. Thompson, 87 Minn. 172, 91 N. W. 483; O'Donnell v. Daily News Co. 119 Minn. 378, 138 N. W. 677. In this they are in accord with the decided weight of modern authority. 25 R. C. L. 689. As was aptly said in the O'Donnell case, this court should not be controlled by the consequences following upon an application of the statute, or deem obnoxious a law which the legislature has placed in the statutes and allowed to remain for many years.

3. The final proposition advanced by plaintiff is this: Defendant had blank order forms to be filled out in duplicate, one to be sent to purchasers of flour or feed when a sale was made. There were two of these forms in use. One was called a deferred delivery sale slip and the other a confirmation of sale slip. At the bottom of the latter these words were printed:

"Baldwin Flour Mills

"By————————."

Defendant testified that these blanks were filled out each day by an order clerk in his office to cover the transactions of the day's business; that when he went to his office on December 21 he found that a set of each of these forms had been filled out to cover the transaction with plaintiff; that the confirmation slip was not signed by any one and that he destroyed all the slips when he wrote plaintiff declining to confirm the alleged sale. Plaintiff contends that these slips when filled out constituted a sufficient memorandum to satisfy the statute, and that the form with "Baldwin Flour Mills" printed on it was sufficiently signed to charge defendant, although he did not actually write his name on the slip. Reliance is placed upon a line of cases holding that a printed signature upon a sale memorandum may answer the requirements of the

147 M.—14..

statute, if there be sufficient evidence of its adoption by the party to be charged. Drury v. Young, 58 Md. 546, 42 Am. Rep. 343, and Wright v. Seattle Gro. Co. 105 Wash. 383, 177 Pac. 818, go as far as any of the decisions to sustain plaintiff's contention. It is unnecessary to express approval or disapproval of the cases. We think it is perfectly plain that by printing "Baldwin Flour Mills, By ———" on the forms; the signature of defendant or his authorized agent upon the blank line was necessary to complete the memorandum. The unsigned slip had no more effect than would an unsigned letter written by a stenographer employed by defendant and destroyed before it was sent to plaintiff.

The order appealed from is affirmed.