GOODHUE COUNTY NATIONAL BANK OF RED WING v. E. P. EKBLAD.[1]

May 15, 1931.

No. 28,395.

*Thomas Mohn* and *Horace W. Mohn,* for appellant.
*A. J. Rockne* and *Albert Mohn,* for respondent.

HILTON, J.

Plaintiff (hereinafter referred to as the bank) appeals from an order denying its motion for a new trial.

Action brought to recover on a $500 promissory note, dated November 1, 1927, and due in six months after date, given by defendant to the bank. This note was the last renewal of a similar note dated November 1, 1923, and renewed at six-months intervals. The notes were given because of a claim made by the bank that defend-

[1]Reported in 236 N. W. 629.

ant was liable to it for an obligation he had assumed on two guaranties hereinafter referred to.

The case was tried to the court without a jury. At the close of all the evidence, findings of fact and conclusions of law were made resulting in an order for judgment in favor of defendant for a recovery of $130, being the amount of interest paid by him on the notes, which sum was demanded in defendant's counterclaim.

On January 28, 1916, the Goodhue County Co-operative Company (hereinafter referred to as the company) a mercantile concern in Red Wing, was desirous of obtaining from the bank certain loans, the proceeds of which were to be used in the purchase of a lot, the erection of a building thereon, and for other business purposes. To further this plan 30 members of the company, of whom defendant was one, signed a written guaranty in which each obligated himself in the sum of $500. The loans so made by the bank, approximating $31,900, were evidenced by promissory notes of the company, none of them running for more than a year. There were renewals of each of such notes. The time limit of the guaranty was five years, but renewals were made of all of the notes after its expiration.

A second guaranty, similar to the first, was made August 24, 1916, and signed by other members of the company; defendant was not one of them. A third guaranty in 1921, similar in form to the first two, was signed by some of the signers of the first, by a part of those who had signed the second, and by others who had not signed either of the prior guaranties. Defendant here signed the first and third.

The situation relative to the guaranties in question and the acts of the bank and the company thereunder were before this court in Goodhue County Nat. Bank v. Fleming, 168 Minn. 50, 209 N. W. 533, and Goodhue County Nat. Bank v. Larson, 174 Minn. 383, 219 N. W. 454. The facts, pertinent here, disclosed in those decisions, need not be further stated, nor need the reasons for the conclusions reached therein, to which we adhere. In the Fleming case, 168 Minn. 50, 209 N. W. 533, it was held that the first guaranty loans

renewed after January 28, 1921, without the knowledge or consent of the guarantors, resulted in a release of such guarantors. Under the holding in that case, defendant was released from all obligations under the first guaranty. Also see Larson case, 174 Minn. 383, 219 N. W. 454.

It was contended by the bank in the Larson case that the third guaranty should be given the effect of a renewal of the first guaranty and continuing it for an additional period. For reasons stated therein it was held otherwise. The third guaranty did not cover the unpaid portions of the loans that were guaranteed under the first guaranty. It only applied to money that might be borrowed by the company from the bank in the future.

After the making of the third guaranty, certain so-called "trade notes" were involved (see statement in Larson case). These notes were received by the company from third parties in the regular course of business. The company indorsed and transferred them to the bank, which gave the company credit for the respective amounts thereof in its checking account.

Taking into consideration the two decisions above referred to, there was no liability remaining on defendant's part because of the first guaranty; there was no liability under the third guaranty if the "trade notes" were sold by the bank to the company. They were so sold; the evidence sufficiently proves it; (they were "cashed"). The bank made certain collections thereon from the signers thereof. The trial court, in holding that there was no consideration for the note here sued upon or for any of those previously given by defendant, determined that the "trade notes" were sold to the company and that the transactions did not constitute loans under the third guaranty.

The liability of the company was that of an indorser and not that of a maker. Plaintiff's attempt under the allegations of its reply to make the company (payee and indorser) a maker was unsuccessful. Burwell v. Gaylord, 119 Minn. 426, 138 N. W. 685, and cases cited. It does not appear that the company ever gave its notes to the bank and pledged these "trade notes" as collateral

security when credit was given the company in its checking account. Whether the bank exceeded its authority in purchasing the notes as it did is not here important.

It was contended by plaintiff that a compromise and settlement was made by the bank and defendant and that a consideration for the note resulted therefrom. Defendant and Sargent, the president of the bank, were the only persons who testified at the trial. Defendant was evidently an uninformed farmer not acquainted with business transactions. His testimony may be summarized as follows: When he went to the bank in 1923 pursuant to a notice sent him, the matter of the guaranties in question was discussed by him with Sargent, acting for the bank. At that time defendant was told that he was liable on the guaranties. Defendant did not know that there had been any renewal of notes after the expiration of the five-year term of the first guaranty, nor that no loans had in fact been made to the company under the third guaranty. The bank had this knowledge and did not communicate it to defendant; it concealed it. It was known by both parties that litigation had been or was about to be instituted to test the liability of the signers under the guaranties. That situation was discussed. Defendant was told that all persons concerned in the guaranty transactions were to be treated alike and that if one of them did not have to pay, then none of them would be required to do so. (In numerous such actions brought by the bank the defendants prevailed.)

Although disputed in part by Sargent, the trial court had a right to and did believe defendant's and other favorable testimony affecting the situation. Relying upon these statements and representations made to him, defendant signed the first note and the several renewals thereof and paid interest. Defendant was not advised of the acts of the bank which in fact had released him from obligations assumed in the two guaranties. Defendant did not have equal means with the bank of ascertaining what those facts were. Defendant's rights were not questionable or doubtful; but, due to the fact that the bank did not inform him as to the situation, he was ignorant of his rights. There was a mistake that warranted the relief given to defendant.

Perkins v. Trinka, 30 Minn. 241, 15 N. W. 115, 116, and Sunset Orchard Land Co. v. Sherman Nursery Co. 121 Minn. 5, 140 N. W. 112, cited by plaintiff, are of no avail to it. In the former it is stated [30 Minn. 243]:

"Where parties whose rights are questionable and doubtful, and who have equal means of ascertaining what their rights are, come together and settle these rights among themselves, a court must enforce the agreement to which they may fairly come at the time, * * *."

In the latter case consideration was given to the applicable law when mutual concessions are made relative to the disputed claim about which both parties in good faith believed there was a question between them.

To constitute a compromise and settlement, sufficient to make a consideration for the note given here, there must have been a bona fide mutual concession by each of the parties. Isaacs v. Wishnick, 136 Minn. 317, 162 N. W. 297; Continental Nat. Bank v. McGeoch, 92 Wis. 286, 66 N. W. 606, 614; 5 R. C. L. 876. That condition did not exist.

The bank made no concession to the defendant, nor did the defendant make any to the bank. The suggestion in plaintiff's brief that the bank held an obligation against defendant for $1,000 ($500 as to the first and $500 as to the second guaranty) and that it relinquished one-half thereof is absolutely untenable. There was no obligation under either. In exhibit C, a letter written by the bank dated October 4, 1923, it was expressly stated that defendant was called upon for the full amount of his guaranty "or $500." There was no yielding here of opposing claims. The issues presented by the pleadings were fully tried and correctly determined in defendant's favor; plaintiff was not entitled to recover.

All assignments of error have been considered, and we find no ground for reversal.

Affirmed.