OLMSTED COUNTY BANK AND TRUST COMPANY v. HOMER H. PESCH AND OTHERS. CHARLOTTE BERNARD AND OTHERS, APPELLANTS.[1]

November 10, 1944.

Nos. 33,820, 33,821.

[1]Reported in 16 N. W. (2d) 470.

*Ernest E. Watson* and *S. S. Larson,* for appellants.

*T. J. Scanlan* and *F. J. O'Brien,* for defendant-respondents.

LORING, CHIEF JUSTICE.

This is an appeal from an order denying a motion for amended findings of fact or a new trial and from a decree of distribution.

The question for decision is the proper distribution of the proceeds of property sold by a trustee under a trust deed after expiration of the period of redemption from a foreclosure by action of the trust deed, at which the trustee bid in the property for the full amount of the debt and expenses of sale.

November 26, 1928, to secure the payment of 67 bonds of $500 each, T. M. Pesch and his wife executed and delivered a first trust deed to defendant Olmsted County Bank and Trust Company, as trustee, of real property which Pesch then owned.

Two of the bonds were later paid and cancelled. The remaining 65 bonds, totalling $32,500, principal, were due and unpaid in November 1938. In December of that year, the trustee started an

action to foreclose under the power in the trust deed. Pesch and his wife answered, offering judgment. The court ordered judgment for plaintiff, which was entered February 23, 1939, for $34,196, and included principal, interest, costs, and fees. It directed the sheriff to sell the property according to law and out of the proceeds to pay the sheriff's costs and the judgment.

April 10, 1939, at the sheriff's sale, the premises were bid in by the trustee for the full amount of the judgment, $34,529.44. The court confirmed the sale the same day and ordered the sheriff to deliver to the trustee a certificate of sale subject to redemption at any time within one year from that date.

Pesch remained in possession under the mortgage moratorium act until July 1, 1941, when the last order of the court, extending the time for redemption, expired.

Subsequent to the confirmation of the foreclosure sale by the court and prior to the expiration of the period of redemption, Pesch purchased 15 of the outstanding 65 bonds from the holders thereof. No redemption from the sale was made by him.

The court, on petition of the trustee, authorized the sale of the property for not less than $35,000. It was sold by the trustee for $39,075, and the amount for distribution, after deducting the proper expenses which the court allowed, was $37,805.74. The distribution of this sum to the first mortgage bondholders pro rata was ordered. Pesch, who is now succeeded by his special administrator, was held to be entitled to 15/65 of the amount.

The claim of the appellants is that, since Pesch was the original obligor, his acquisition of these 15 bonds constituted a cancellation of them and inured to the benefit of the other bondholders and that consequently he should not share in the distribution. A question as to the disallowance of the intervening bondholders' attorneys' fees is also raised.

The court below entered judgment and directed the sheriff to sell in accord with Minn. St. 1941, § 581.03 (Mason St. 1927, § 9636). The sale was confirmed by the court. By § 581.09 (§ 9642), it is provided that, when the sale is so confirmed, the clerk shall enter

satisfaction of the judgment to the extent of the sum bid for the premises. The full amount was bid in this case, so the judgment was completely satisfied. The bonds were no longer the personal obligations of T. M. Pesch, because they were paid in full by the sale of the security. Sergeant v. Ruble, 33 Minn. 354, 23 N. W. 535; Tinkcom v. Lewis, 21 Minn. 132, at 137; American Bldg. & Loan Assn. v. Waleen, 52 Minn. 23, 53 N. W. 867; Boutelle v. Minneapolis City, 59 Minn. 493, 61 N. W. 554; 4 Dunnell, Dig. & Supp. § 6313. In the Sergeant case, Justice Mitchell said (33 Minn. 356, 23 N. W. 536):

"* * * It is elementary that upon a foreclosure sale of the property the mortgage debt is extinguished to the amount of the purchase-money. This result is the same whether the premises be bid in by the mortgagee or purchased by a third person."

In the Tinkcom case, this court said (21 Minn. 137):

"* * * In this case, the lands sold for the full amount due on the plaintiff's mortgages, with costs, etc., and the sales therefore operated as a payment in full of the debts due the plaintiff, and a satisfaction and discharge of his mortgages."

Having been paid, the bonds were no longer subject to the rules applicable to commercial paper. They were commercially dead. First Nat. Bank v. Maxfield, 83 Me. 576, 22 A. 479; In re Paradis' Estate, 134 Me. 333, 339, 186 A. 672, 675.

After confirmation of the sale to the trustee, it held the land for and on behalf of the bondholders, subject only to the right of redemption. The bondholders' rights were to share pro rata in the proceeds if a redemption was made, and, if there was no redemption, then the trustee held the fee title in trust for the bondholders. The bonds which they held were merely evidence of their proportionate rights in the property. When the property was sold by the trustee, they were entitled to the proceeds in proportion to their respective holdings.

How did it affect the rights of the bondholders that Pesch, after confirmation of the sale, purchased 15 of the bonds? It is the

contention of appellants that these bonds were negotiable instruments under Minn. St. 1941, § 335.45 (Mason St. 1927, § 7162), which provides:

"A negotiable instrument is discharged:

"(1)  By payment in due course by or on behalf of the principal debtor;" or

"(5)  When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

It is appellants' theory that Pesch became the owner of the 15 bonds after maturity in his own right and thereby discharged them as obligations, leaving only the other bondholders as the beneficial owners of the property bid in at the sale by the trustee.

The flaw in this argument is that these bonds, as evidence of Pesch's debt, were paid in full by the foreclosure sale and thereafter evidenced no debt of Pesch. He had, by the trust deed, pledged the real property here involved as security for the indebtedness. The property had been sold, and under the law the sale to the trustee for the whole amount due became a full satisfaction of the judgment and a payment of the debt. Pesch was no longer a debtor, since his debt was paid by what the security sold for. Therefore, upon purchase of the bonds, he did not discharge an obligation to the bondholders. His debt to them had been paid by the sale of the security. Since his debt as mortgagor was entirely paid, he reëntered the situation not as a debtor but as a purchaser. He was not estopped from taking an assignment of these bonds and participating in the distribution of the proceeds of the sale made after the expiration of the period of redemption. He did not thereby acquire a title in any way inconsistent with the trust deed. What he did acquire was a part of the beneficial interest in the property, which, upon expiration of the redemption period, ripened into a fee simple in the trustee for the benefit of the bondholders.

It is only confusing to entangle the devolution of the title to the security with what occurred to the principal obligation. Ownership of real estate has been protected by the law granting a mort-

gagor a right of redemption. That was all Pesch had left after the sale. He had a right to redeem, not an obligation to do so. Under our law, the fee title did not pass until the time for redemption expired, but that did not keep the original debt alive after it had been paid.

In the matter of attorneys' fees, interveners neither sought to preserve the trust estate from dissipation nor to increase the corpus thereof. The services were rendered in behalf of a group of beneficiaries in an endeavor to exclude another beneficiary from participation in the trust estate. Under such circumstances, interveners are not entitled to an allowance for attorneys' fees, and the trial court was right in disallowing them. In re Estate of Purcell, 125 N. J. Eq. 372, 6 A. (2d) 137; Tomlinson's Estate, 54 York Legal Rec. (Pa.) 115, and cases cited.

Order and decree affirmed.

