## H. L. NYBLADH v. PEOPLES STATE BANK OF WARREN.

76 N. W. (2d) 492.

April 6, 1956—No. 36,688.

Olson & Holmquist and Harry H. Peterson, for appellant.

A. A. Trost, for respondent.

MURPHY, JUSTICE.

This is an action for a declaratory judgment to determine plaintiff's liability as maker of a note. A "cross-claim" by defendant,[1] as payee, for the full amount thereof plus interest and collection expenses resulted in a directed verdict for defendant. From the order denying his motion "for judgment notwithstanding the verdict, or in the alternative, for amended Findings of Fact, Conclusions of Law and Order for Judgment, or for a new trial,"[2] plaintiff appeals.

Although this action concerns plaintiff's liability on a $2,039.29 note made by him payable to defendant bank, it had its inception in a note for $6,500 executed by one Bergman as evidence of a loan from the bank in August 1948 on which payment was guaranteed by plaintiff and three others, Oscar Trandum, Trygve Trandum, and Roy Edman. Concurrent with the note, Bergman and his wife executed a real estate mortgage on their store and a chattel mortgage on goods therein to defendant. On November 1, 1949, when the first

[1] Defendant's "cross-claim" was, of course, a counterclaim, Rule 13.01 of Rules of Civil Procedure, and will be hereinafter so designated.

[2] On plaintiff's motion the court ordered a jury trial, but at the conclusion of the evidence directed a general verdict for the defendant on its counterclaim, such verdict being also determinative of the issue raised by plaintiff's declaratory judgment action. The court's original findings of fact and conclusions of law were amended on its own motion and later on again amended in part. While, as the trial court recognized, the findings were not required, Rule 52.01, the parties have raised issues dependent upon which set of findings control. We disregard the findings and treat the case as if the general verdict had no such subsequent history. See, Wright, Minnesota Rules, Commentary to Rule 52, p. 294.

payment on the note became due, Bergman defaulted. The Bergmans executed and delivered a quitclaim deed to the mortgaged premises on February 10, 1950, to one of the guarantors, Oscar Trandum, a stockholder and later a director of the defendant bank. His brother, Trygve Trandum, since deceased, another guarantor, was at the time a stockholder and director. It is not clear from the record whether Oscar had been appointed by the others to accept and dispose of the property. Oscar Trandum let the building under a written lease and applied the rent proceeds against the guarantors' liability on the note.

It was then discovered that a judgment had been docketed against Bergman prior to the unrecorded quitclaim deed but subsequent to the mortgage.[3] It seems to have been orally agreed between the guarantors and the bank that for the benefit of the guarantors the bank would foreclose the mortgage and convey to the guarantors, the purpose being to clear the cloud on the quitclaim title by avoiding the apparent judgment lien on the premises.

At the time of the foreclosure sale, November 10, 1950, all four of the guarantors had made payments on the $6,500 note; three of them, including plaintiff, each paying $466.93 principal and interest, the fourth paying $200. Rent in the sum of $161 had been applied to the note. The bank bid in the property at the foreclosure sale for the amount due the guarantors from Bergman, $7,714.84. On June 30, 1951, three of the guarantors, including plaintiff and Oscar Trandum, made a note to the bank for $5,503.24,[4] the amount that, in the absence of foreclosure, would have remained unpaid on the original Bergman $6,500 note. On August 15, 1951, the bank executed a warranty deed to the Bergman premises naming the three comakers on the $5,503.24 note as grantees. There was no redemption from the foreclosure.

At all times, Trandum's tenants under the original quitclaim deed have remained in possession, their rent being applied first to the

---

[3]The rights of Bergman's judgment creditors are not involved in this case.

[4]The fourth guarantor's share was divided among the other three who later received a note from him for the proportionate amount.

$6,500 note, then to the $5,503.24 note. On January 20, 1953, plaintiff and the other two makers paid the balance due on the $5,503.24 note.[5] The plaintiff paid by giving his note for $2,039.29, which is the subject of this action.

At the conclusion of the testimony the court granted the defendant's motion for a directed verdict on its counterclaim. The court indicated in its memorandum that the undisputed facts established that the note sued upon was not only a renewal note but that "as a matter of law, it constituted a compromise between the guarantors and the payee bank and a forbearance by the payee bank sufficient to give it a valuable consideration." He further held, contrary to the contentions of the plaintiff, that upon the facts in the case there was sufficient performance of a parol agreement so as to take the transaction out of the statute of frauds.

The record in this case is confused and the issues are not clearly defined. This may be attributed to the vague nature of the negotiations between the parties and their testimony, which at times was unintelligible, more than to any fault of court and counsel. In his memorandum the trial court said: "The record of the trial of this cause will never be used as a model for demonstrating clarity in factual presentation."

This case presents simply the question of whether or not there was consideration for plaintiff's note. The trial court decided that, as a matter of law, there was a sufficient consideration. Since we agree with the plaintiff that the evidence presented factual issues requiring a determination by a jury and hold that there must be a new trial, only those issues which we conceive to be controlling in the retrial will be discussed.

■ It seems clear that there was actually an oral understanding between the guarantors and the bank that, to avoid an apparent judgment lien, the latter would foreclose the Bergman mortgage for the benefit of the former and convey the premises to them. The first

---

[5]To arrive at the balance due, the parties deducted the rent applied, settled the $500 interest for $300, and added the cost of insurance on the building.

point raised by the plaintiff is that this agreement, by which the bank was to purchase the mortgaged property at the foreclosure sale and afterward convey to the guarantors, was within the statute of frauds as being one by its terms not to be performed within a year, and as one creating, granting, assigning, and declaring an interest in lands. M. S. A. 513.01(1) and 513.04.[6]

Plaintiff urges that his obligation as a guarantor was fully discharged when the bank purchased the property at the foreclosure sale and that the bank cannot recover on an oral agreement which by its terms contravenes the statute of frauds as being (a) one not to be performed within one year, and (b) a contract for the sale of land or some interest therein. This contention of the plaintiff is supported by the controlling decision of this court in Veazie v. Morse, 67 Minn. 100, 69 N. W. 637, where the same factual situation was presented. See, also, Pierce v. Clarke, 71 Minn. 114, 73 N. W. 522.

The plaintiff further urges that, since the foreclosure sale satisfied his obligation on the original note, the note here involved is void for want of consideration. Olmsted County Bank & Trust Co. v. Pesch, 218 Minn. 424, 16 N. W. (2d) 470; Veazie v. Morse, *supra;* 12 Dunnell, Dig. (3 ed.) § 6313; Northern Drug Co. v. Abbett, 205 Minn. 65, 284 N. W. 881, 121 A. L. R. 1349; McGovern v. City of New York, 234 N. Y. 377, 138 N. E. 26, 25 A. L. R. 1442. It follows that, unless the bank can establish proof of consideration which will support the note involved, the plaintiff should prevail.

■ In support of its contention that the court was correct in determining as a matter of law that there was a valid consideration, the defendant asserts that, since consideration may be found for the

---

[6]The statute of frauds was not pleaded. Defendant's counterclaim, although inadvertently mislabeled, was a counterclaim denominated as such. Instead of replying thereto, Rule 7.01, the plaintiff, at the trial court's suggestion, designated his complaint as the reply. But the complaint predicated the invalidity of the note on fraud, payment, and lack of consideration. Thus, although an affirmative defense, Rule 8.03, the statute of frauds was not pleaded. The issue has been thoroughly litigated, however, both in the trial court and here without the deficiency being mentioned by the defendant.

$5,503.24[7] note in an executed conveyance, the statute of frauds becomes irrelevant. For the conveyance to be executed, there must be a valid delivery. The $5,503.24 note was made on June 30, 1951. The bank's warranty deed running to the guarantors and makers of the note was executed on August 15, 1951. The president of the bank handed the deed to Trandum, who returned it to him apparently for safekeeping. The deed, which has not been recorded, remained in the Bergman file at the bank until the commencement of this action. The intent of the bank to pass title coupled with Trandum's intent to accept would consummate delivery even if the deed were returned for safekeeping.[8]

But whether or not there was an actual delivery of the deed by the bank to Trandum so as to complete the executed contract was a question of fact to be determined by the jury. Exsted v. Exsted, 202 Minn. 521, 279 N. W. 554, 117 A. L. R. 599.

■ Assuming the bank did in fact deliver the warranty deed to Trandum, the question that then arises is whether or not that act constituted delivery to the plaintiff. Acceptance being an integral part of delivery, Kessler v. Kruidenier, 174 Minn. 434, 219 N. W. 552; 16 Am. Jur., Deeds, § 153, it would be necessary to find an agency existed between Trandum and his coguarantors before it can be established that the plaintiff was bound by the act of Trandum. There is evidence in the record that until the time of the trial the plaintiff had no knowledge of the execution of the deed or that delivery had been made to Trandum. No presumption of acceptance arises where the act is neither beneficial to nor later ratified by the grantee.[9]

It is contended by the defendant that the record establishes proof of partnership on the part of the guarantors to deal in real estate; that the coguarantors first agreed among themselves to allow Tran-

---

[7]If this note was valid so also was the subject of this action, plaintiff's $2,039.29 note, which represents payment of the earlier note.

[8]Compare Kessler v. Von Bank, 144 Minn. 220, 174 N. W. 839, with Upton v. Merriman, 116 Minn. 358, 133 N. W. 977.

[9]See, 16 Am. Jur., Deeds, § 153; cf. Barnard v. Thurston, 86 Minn. 343, 90 N. W. 574.

dum to take the quitclaim deed from Bergman, manage and sell the property; and that Oscar Trandum became an agent of the partnership for the purposes of its business. It is contended that pursuant to said agreement rents were collected by Trandum and applied as part payment to the Bergman $6,500 note and later upon the $5,503.24 note executed by three of the guarantors and delivered to the bank. The defendant further points out that the guarantors were in possession by their tenant who was occupying the premises under a written lease executed by Trandum at the time of the foreclosure.

An oral partnership may be formed to purchase realty even if only a single tract without violating the statute of frauds. Bakke v. Keller, 220 Minn. 383, 19 N. W. (2d) 803; Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570. Since there is no arbitrary test for determining the existence of a partnership, each case must be decided according to its own peculiar facts. Cyrus v. Cyrus, 242 Minn. 180, 64 N. W. (2d) 538, 45 A. L. R. (2d) 1002. Though an agency may not be implied merely from the relation of comakers on a note, Willoughby v. Irish, 35 Minn. 63, 27 N. W. 379, there may be factors sufficient to present a jury question as to whether the comakers were acting jointly regarding the property through Trandum as their agent. It appears that the guarantors were aware that Trandum had received the original quitclaim deed and acquiesced in his conduct in collecting rents from the property for their benefit. There is also evidence that they were aware he leased the property to the present tenants. We conclude, however, there is not sufficint evidence in the record to establish as a matter of law that an agency existed. Whether or not there was an agency or a partnership which would result in the plaintiff being bound by the acts of Oscar Trandum is a question of fact for the jury.

■ The defendant further contends that, even if it be assumed that the delivery of the deed was defective and the conveyance not therefore executed, the trial court's order can be sustained on the basis of a sufficient part performance to remove the original agreement to purchase after foreclosure from the statute of frauds. Part performance is predicated upon possession of the property by the

guarantors through their tenants and the application of rents collected toward payment of the $5,503.24 note. The difficulty with this contention is that the possession of the coguarantors through their tenants is based upon the original quitclaim deed from Bergman and is not referable to the alleged agreement to purchase from the bank after foreclosure. In Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. (2d) 362, 366, 166 A. L. R. 435, this court adopted the rule in Restatement, Contracts, § 197, which provides:

"Where, acting under an oral contract for the transfer of an interest in land, the purchaser with the assent of the vendor

\*　\*　\*　\*　\*

"(b) takes possession thereof or retains a possession thereof existing at the time of the bargain, and also pays a portion or all of the purchase price,

"the purchaser or the vendor may specifically enforce the contract."

In discussing this rule with reference to circumstances under which an oral contract for the purchase of real estate might be removed from the scope of the statute of frauds, Mr. Justice Matson said in the Shaughnessy case (222 Minn. 147, 23 N. W. [2d] 366):

"In other words, the acts of taking possession and of making part payment, when they are performed under or in reliance upon the oral contract as to be unequivocally referable to the vendor-vendee relationship *and not referable to any other relation between the parties,* are sufficient to remove the contract from the statute of frauds." (Italics supplied.)

See, also, Holste v. Baker, 223 Minn. 321, 26 N. W. (2d) 473. Since the possession must be unequivocally referable to the oral contract, mere continuance of a preexisting possession under a different title is not by itself sufficient.[10]

If the evidence on retrial should establish facts compatible with a vendor-vendee relationship between the bank and the plaintiff as one of the comakers of the $5,503.24 note, consistent with the test

[10]See, Annotation, 101 A. L. R. 1015; Kepner, *Part Performance in Relation to Parol Contracts for the Sale of Lands,* 35 Minn. L. Rev. 431.

announced in the Shaughnessy case, the bank may be entitled to a jury determination of the question of unequivocal reference.

■ Apparently one of the grounds for the trial court's direction of the verdict is the theory that a compromise settlement of the $5,503.24 note was consideration for the plaintiff's $2,039.29 note. It does not appear that this issue was raised by the pleadings and seems to have been first introduced in the case in the trial court's memorandum which was made a part of his order denying plaintiff's motion for amended findings. Since this point may be raised on a retrial, it should be noted that to compromise there must be a dispute. The disputed claim need not necessarily be valid or even doubtful providing the parties bona fide believed it so. In other words, good faith, not color of right, is the primary test. Peterson v. Hegna, 158 Minn. 289, 197 N. W. 484.[11] Thus, forbearing to pursue a claim, which the parties believed to be valid, could constitute consideration for the renewal note. 4 Dunnell, Dig. (3 ed.) § 1760.

It appears from the record that both the makers and the bank believed the $5,503.24 note to be valid, although the plaintiff testified he had no knowledge of the foreclosure when he signed it. If this issue should become pivotal and it should ultimately appear that this belief was occasioned solely by a mistaken understanding of the legal effect of the foreclosure, plaintiff would be entitled to a verdict. See, Kruchek v. Kruchek, 173 Minn. 491, 217 N. W. 595; Morrison v. Morse, 75 Minn. 126, 77 N. W. 561. A similar result would follow a finding of misrepresentation by the bank. Goodhue County Nat. Bank v. Ekblad, 183 Minn. 361, 236 N. W. 629.

On the other hand, the parties may have believed the $5,503.24 note to be valid because they believed their oral agreement to be legally binding. And as is apparent from our earlier discussion, the note from this standpoint is not so devoid of validity that a

[11]Although good faith is primary, a wholly baseless or utterly unfounded claim is not consideration; a person need not buy off a completely spurious lawsuit. Compare Thayer v. Knight, 210 Minn. 171, 297 N. W. 625, with Montgomery v. Grenier, 117 Minn. 416, 136 N. W. 9. See, also, Anderson v. Nystrom, 103 Minn. 168, 114 N. W. 742, 13 L.R.A.(N.S.) 1141; Peterson v. Hegna, *supra.*

claim resting thereon would be without substance. Thus, by settling the $500 interest for $300 and by forbearing to immediately pursue the plaintiff's matured obligation on the $5,503.24 note, it may be found that in accepting plaintiff's $2,039.29 note the bank compromised a claim asserted in good faith and on reasonable grounds. But here again good faith and reasonable grounds are fact questions to be determined by the trier of fact.

Since the litigation here involved should be determined upon the issues herein noted, the other reasons and theories relied upon by the defendant to support the court's order are not discussed. It is sufficient to say that under every theory presented by the defendant to support the result below, there must be a new trial to determine the fact issues involved. In the search for a consideration to support plaintiff's note, we assume that on a new trial the various theories will be limited by the rule that "Nothing is consideration * * * that is not regarded as such by both parties." Suske v. Straka, 229 Minn. 408, 415, 39 N. W. (2d) 745, 750; McGovern v. City of New York, *supra.*

Reversed and new trial granted.

Mr. Justice Knutson took no part in the consideration or decision of this case.