**Kriene B. KRAMER, et al., Appellants,**

**v.**

**Darrell BRUNS, individually and d/b/a The Bruns Elevator Company, Inc., Respondent.**

**No. C8–86–924.**

Court of Appeals of Minnesota.

Nov. 25, 1986.

Michael J. Michalski, Windom, for appellants.

David D. Meyer, Muir, Meyer, Simons and Costello, Lakefield, for respondent.

Heard, considered and decided by NIER-ENGARTEN, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

WOZNIAK, Judge.

Appellants Kriene Kramer, Stanley Kramer, and Glen Kramer appeal the granting of summary judgment in favor of Darrell Bruns individually and the Bruns Elevator Company (Bruns). The trial court assumed in ruling on the summary judgment motion that all appellants' factual allegations were true. The trial court determined Bruns was entitled to judgment as a matter of law on Kramers' claims of breach of contract, fraud, and business tort, and entered summary judgment in Bruns's favor. We affirm.

## FACTS

Respondent Darrell Bruns is a bonded warehouseman and, together with his wife, is an owner of a small, closely-held corporation known as Bruns Elevator Company, Inc. In July of 1982, Kramers became interested in purchasing and storing grain in a building known as the "Champion

Home Building" in Slayton, Minnesota, in which they intended to store grain.

In August 1982, the Commodity Credit Corporation (CCC) announced a program under which parties could bid to store corn owned by the CCC for a period of two years. The CCC required submitted bids by September 1, 1982. Upon notification of the CCC's acceptance of the bid, the bidder was entitled to withdraw the bid.

On August 30, 1982, Bruns made an offer to the CCC to store 210,000 bushels of corn in his facility. In August of 1982, Kramers contacted Bruns and requested that he submit a bid to store CCC corn in the Champion Home Building. Kramers claim that Bruns orally agreed at that time to their grain storage plan. Under their plan, Kramers would purchase the Champion Home Building and convert it to a warehouse for grain storage. Bruns would submit a bid to the CCC to store corn in the building. If the CCC accepted the bid, both parties would be responsible for checking and maintaining the stored corn. Payments from the CCC would be spread over two years. Of those payments from the CCC, Kramers would receive sixty percent, and Bruns would receive forty percent.

On August 19, 1982, Kramers entered into a contract to purchase the Champion Home Building. Kramers claim they purchased the Champion Home Building and made improvements to it upon reliance of their contract with Bruns and anticipating a substantial profit under the contract.

On September 1, 1982, Bruns submitted a bid to the CCC to store 900,000 bushels of corn in the Champion Home Building. On or about September 15, 1982, the CCC notified Bruns that it was willing to accept both bids for the storage of 210,000 bushels of corn and for the storage of 900,000 bushels of corn.

Bruns notified the CCC that he would accept the bid for the storage of 210,000 bushels of corn, but rejected the bid for 900,000 bushels of corn. Thereafter, Bruns notified Kramers of his rejection. Bruns was concerned about undertaking the joint responsibility for maintaining the stored corn in a facility which he did not control. Additionally, undertaking such a large storage would increase his bond significantly. He feared that if the corn were inadequately stored or monitored, as the bonded warehouseman, he would be liable.

When Bruns withdrew the bid, Kramers brought suit, alleging breach of contract, fraud, and negligence. Upon Bruns's motion, the district court granted summary judgment on the grounds that (1) the alleged oral agreement could not have been performed within one year and thus is barred from enforcement under the statute of frauds; (2) Kramers failed to allege facts showing they acted upon a false representation, a necessary element to establish fraud; and (3) negligence is inapplicable to a breach of contract claim.

## ISSUES

1. Did the trial court err in holding that the statute of frauds precluded enforcement of contract when that contract could not have been performed within one year?

2. Did the trial court err in holding that the statements and conduct of respondents did not constitute fraud as a matter of law?

3. Did the trial court err in holding that statements and conduct of respondents did not constitute negligence as a matter of law?

## ANALYSIS

1. The statute of frauds precludes a breach of contract claim when the contract could not have been performed in one year. Section 513.01, the statute of frauds, provides in part:

No action shall be maintained, in either of the following cases, upon any agreement, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party charged therewith:

(1) Every agreement that by its terms is not to be performed within one year from the making thereof;

Minn.Stat. § 513.01 (1984). The contract provided that Kramers would provide the warehouse space for a two-year period, with shared responsibility for checking the grain over a two-year period, and Kramers receiving payments over a two-year period.

While the application of the statute of frauds may often seem to yield harsh results, it guards against leaving the proof of a contract which is to run beyond a year dependent on the memory and truthfulness of witnesses and the parties. In some cases, the statute of frauds guards against one party foisting an obligation on one who never agreed to accept the obligation. 2 A. Corbin, *Corbin on Contracts* § 275, at 3 (1950). The Minnesota Supreme Court has stated that the right to invoke the statute as a defense is not regarded with disfavor regardless of the consequences which sometimes follow its application. *See Upton Mill & Elevator Co. v. Baldwin Flour Mills*, 147 Minn. 205, 209, 179 N.W. 904, 905 (1920).

The Kramers do not dispute that the oral contract could not have been performed in one year. The Kramers argue, however, that the rule of part performance by one party will take a case out of the statute of frauds. They conclude their purchase and improvements on the property constitute part performance, taking this oral agreement out of the statute's purview.

■ Part performance does not operate as an excuse to the statute of frauds under section 513.01 governing contracts not to be performed within one year.[1] In *Roaderick v. Lull Engineering Co.*, 296 Minn. 385, 208 N.W.2d 761 (1973), the Minnesota Supreme Court held that an oral employment agreement providing for a minimum of two years' employment precluded plaintiff's action based on the statute of frauds. The court, in dismissing plaintiff's argument of part performance, stated:

> Plaintiff argues that the rule that part performance by one party will take a contract out of the statute of frauds

should apply to this case. However, it is generally held that the uncompleted part performance of an oral contract for employment, not to be performed within 1 year, does not take the contract out of the statute of frauds. Since the doctrine of part performance does not remove the oral contract from the statute of frauds, an action based on oral contract is foreclosed.

*Id.* at 388; 208 N.W.2d at 763–64 (citation omitted); *see Worwa v. Solz Enterprises, Inc.*, 307 Minn. 490, 492, 238 N.W.2d 628, 631 (1976) (citing *Roaderick*, 296 Minn. 385, 208 N.W.2d 761).

■ Minnesota courts have never allowed part performance to remove an oral contract from the statute of frauds under 513.01 governing contracts not to be performed within one year. Accordingly, the breach of contract claim is precluded by the statute of frauds.

2. The Kramers allege Bruns's statement of intention to accept a government storage offer, split the profit with them, and Bruns's later decision not to do so, constitute fraud.

■ Fraudulent misrepresentation consists of the following elements:

1. There must be a representation;
2. That representation must be false;
3. It must have to do with a past or present fact;
4. That fact must be material;
5. It must be susceptible of knowledge;
6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;
7. The representer must intend to have the other person induced to act, or justified in acting upon it;
8. That person must be so induced to act or so justified in acting;
9. That person's action must be in reliance upon the representation;

---

**1.** Part performance may take a case out of the statute of frauds only with regard to oral contracts for conveyance of real estate under sec-

tion 513.04. *See e.g., Nybladh v. Peoples State Bank of Warren*, 247 Minn. 88, 94–95, 76 N.W.2d 492, 498 (1956).

10. That person must suffer damage;

11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Davis v. Re-Trac Manufacturing Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967).

■ In this case, the Kramers fail to allege misrepresentation of a past or present fact; they allege only that Bruns made a statement of an intent to act in the future. Promises to act in the future do not form the basis for a fraud action. In *Dollar Travel Agency v. Northwest Airlines,* 354 N.W.2d 880 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn.Dec. 21, 1984), the court stated:

Arguably, all the statements complained of were predictions or opinions. Fraud must relate to a past or existing fact and cannot be predicated on statements of intention or opinion.

*Id.* at 883 (citing *Cady v. Bush,* 283 Minn. 105, 109, 166 N.W.2d 358, 361 (1969)).

■ A misrepresentation does not constitute fraud unless affirmative evidence indicates that the promisor did not intend to perform at the time he or she made the promise. *Benson v. Rostad,* 384 N.W.2d 190, 194 (Minn.Ct.App.1986) (citing *Vandeputte v. Soderholm,* 298 Minn. 505, 508, 216 N.W.2d 144, 147 (1974)). In this case, no evidence indicates Bruns gave anything other than an indication of an intent to act in the future. The Kramers argue that Bruns orally agreed and then backed out of the agreement in order to preclude competition with his elevator operation; however, this allegation is not substantiated by the record.

■ 3. Finally, appellants argue respondents committed a careless, reckless, and negligent tortious act by refusing to accept the grain storage offer. Even if appellants' allegations of bad faith were true, bad faith termination of a contract is not an independent tort. *Wild v. Rarig,* 302 Minn. 419, 442, 234 N.W.2d 775, 790 (1975) (per curiam), *cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976).

**DECISION**

The trial court did not err in granting summary judgment in Bruns's favor and its order is affirmed.

Affirmed.