# C. N. SONNESYN v. HENRY HAWBAKER.[1]

July 31, 1914.

Nos. 18,630—(160).

**Partnership — verdict sustained by jury.**

1. Plaintiff procured the sale of a tract of land from a third party to defendant, the contract being taken in the name of defendant. The evidence sustains the finding of the jury that it was agreed between plaintiff and defendant that the land was bought for their joint benefit, and that, on plaintiff's procuring a sale, the parties should divide the net profits.

**Same — statute of frauds.**

2. Such a contract was in the nature of a partnership or joint adventure, and was not the sale to plaintiff of an interest in land, and was not within the statute of frauds.

**Verdict negatives fraud of plaintiff — offer of evidence.**

3. Evidence was received upon the question whether plaintiff committed a fraud upon the vendor by acting as agent and purchasing in his own interest, without the consent of the vendor, and the question was submitted to the jury, and they were instructed that if such conditions existed their verdict must be for defendant. The verdict for plaintiff is a finding that there was no such fraud, and defendant cannot obtain relief on that ground. The rejection of a certain offer of evidence of fraud and the denial of a motion to amend to allege such fraud, *held* not prejudicial error in view of the fact that it does not appear that further material evidence could have been produced.

**Evidence of collateral facts.**

4. The reception of certain evidence as to collateral facts was within the discretion of the trial court and was properly received as corroborative of plaintiff's testimony.

**Demand for money — evidence admissible.**

5. Evidence of a demand for money to which no reply is made may be received when the demand is made under such circumstances that a reply would ordinarily be made.

**New trial — remarks of counsel.**

6. Determination of the question whether improper remarks of counsel

[1] Reported in 148 N. W. 476.

were prejudicial rests largely in the discretion of the trial court. Counsel made improper remarks in his address to the jury. The court directed him to desist and he did so and the court directed the jury not to consider such matters as were the subject of the remarks. The case presented does not warrant this court in granting a new trial on this ground.

**Record on appeal — original verdict conclusive.**

7. The original verdict filed with the clerk is part of the record proper, and is no proper part of a settled case. If the verdict as incorporated in the settled case conflicts with the original verdict as so filed, the latter will be regarded in this court as the true verdict.

Action in the district court for Watonwan county to recover $2,-640 for loss of one-half of the profits to be derived from the sale of certain premises. The case was tried before Pfau, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict for $3,331.71 in favor of plaintiff. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant apealed. Affirmed.

*J. L. Lobben, S. B. Wilson, E. J. Hawbaker* and *Henry W. Mead,* for appellant.

*Hammond & Farmer,* for respondent.

HALLAM, J.

Plaintiff was engaged in the land business at Butterfield, Watonwan county, Minnesota. Defendant was a resident of Illinois, a man of means and an investor in southern Minnesota lands. Plaintiff and defendant had had some land dealings prior to the transaction here in question. In 1909 one Peter Falk had for sale a farm near Butterfield. It had been on the market for some time at $36 an acre. In the summer he went to Dakota and, before going, raised the price to $45 an acre. Plaintiff had the land listed for sale but had no exclusive agency. It was listed with another agent also. Plaintiff had previously tried to interest defendant in this land. On defendant's arrival in Butterfield, in September, 1909, the subject of buying this land came up again. Defendant was not willing to negotiate at the new price of $45 an acre. After several conferences between plaintiff and defendant it was decided to prepare a contract

of sale running from Falk to defendant at the old price of $36 an acre, to have defendant sign it and send it on to Falk with a check for $1,000, as a proposition which he might accept by signing and returning the contract. This was done, and Falk returned the contract signed. This contract called for further payments and delivery of a deed March 1, 1910.

It is conceded that there was some further negotiation between plaintiff and defendant as to the resale of the land. The parties are not agreed as to the nature of this negotiation. Plaintiff testified that it was agreed "he would go in with me on a half of the profits, and advance the money at 6 per cent interest, provided I would stand the loss, if there was any." Defendant's version is that he told plaintiff "if you sell this farm by the first day of January for $50 an acre I will give you half of the difference between $36 and $50 * * * . He said all right."

Plaintiff claims that in November, 1909, he made a resale of the land to one Fletcher Brown at $50 an acre, less $2 an acre commission to be paid another agent, took from Brown a written contract and received from him $500 earnest money; that he reported this sale to defendant and defendant then said he preferred to keep the land and to pay plaintiff the amount he would receive on consummation of such a sale, and that this was agreed to. Defendant denies this and denies that he was ever informed of a sale to Brown, or to anyone, or that any resale was ever made.

The jury found for plaintiff.

1. The questions whether the agreement was as plaintiff claims, whether the sale to Brown was in fact made, and whether defendant made the subsequent agreement to pay plaintiff the amount here demanded, are pure questions of fact with ample evidence to support a finding in favor of plaintiff. We accept the jury's determination of these facts in plaintiff's favor as final.

2. Defendant contends that the agreement as testified to by plaintiff was one for the conveyance to him of an interest in land, and was void because not in writing. It appears to us that the contract as testified to by plaintiff created a partnership or a joint adventure. Defendant contributed the capital. Plaintiff contributed his serv-

127 M.—2.

ices and assumed some financial obligation. The technical name of the relationship created is not important. It was a joint enterprise for their mutual benefit. The agreement was a valid and binding one. It was not necessary that it be in writing. It is well settled in this state that an agreement between two parties to purchase real property for the purpose of selling again for a joint profit is a contract in the nature of a partnership and is valid though not in writing. Newell v. Cochran, 41 Minn. 374, 43 N. W. 84; Stitt v. Rat Portage Lumber Co. 98 Minn. 52, 107 N. W. 824. An agreement to share profits or losses arising from the purchase and sale of real estate is not a contract for the transfer or conveyance of an interest in land. 20 Cyc. 237; Bates v. Babcock, 95 Cal. 479, 30 Pac. 605, 16 L.R.A. 745, 29 Am. St. 133; Babcock v. Read, 99 N. Y. 609, 1 N. E. 149; Bruce v. Hastings, 41 Vt. 380, 98 Am. Dec. 592. It is not important that the contract related to only one piece of land. The character of the contract and the relationship it creates between the parties depends upon its terms, and not upon the magnitude or extent of the transactions covered. Stitt v. Rat Portage Lumber Co. 98 Minn. 52, 107 N. W. 824; Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108. If the contracts as testified to by plaintiff were in fact made, they then are valid and binding contracts.

3. The next contention is that, if the purchase of this land from Falk was part of a joint adventure, the contract was void, because plaintiff was the agent of Falk, and a purchase in his own interest was contrary to good morals and public policy. We need spend no time discussing the proposition that an agent to sell cannot sell to himself, and if he does so the principal may declare the contract void. Whether one who is a partner in a purchase may avoid his partnership agreement on the ground that the negotiation is a fraud upon a third party may not be free from doubt, but we are not troubled with that question here. A real estate agent with whom land is listed for sale may buy from his principal if his principal so wills it. The court submitted to the jury the question whether plaintiff did in fact perpetrate a fraud on Falk. He instructed the jury that, if plaintiff did do so, "he would not be entitled to recover

in this case," but that if "while he was acting for Peter Falk as agent to a certain extent and while he had this land listed with him for sale \* \* \* it was understood that he would have the right to buy the land \* \* \* if he had that understanding with Peter Falk, then he had the right to buy it for himself and can recover in this action." The jury, by finding a verdict in favor of plaintiff, necessarily found this issue in plaintiff's favor, that is, they necessarily found that plaintiff had an understanding with Falk that he had the right to buy for himself. The evidence sustains this finding. Plaintiff explicitly testified that Falk urged him to buy. Falk said: "He was to sell it, nothing else, whether he bought it or whether he sold it to some one else, I didn't care," and the evidence shows that Falk did not in fact pay plaintiff any agent's commission.

Defendant made offer of proof as follows: "We wish to make an offer at this time, to prove by this witness (Peter Falk) that the plaintiff through fraud induced Peter Falk to reduce the price on this land from $45 to $36 an acre, and that he represented to Mr. Falk that he had sold this land to one, other than himself; and that said Falk did not know at the time of the sale that the plaintiff claimed to be interested in such purchase and sale; and if the plaintiff's claim is true as made in this action he is advancing a fraud, which the law nor the courts will not permit or encourage, and if such facts are proved, it is urged by the defendant in this action, it prevents a recovery in this case." This offer was objected to and objection sustained. This ruling is assigned as error. In view of the theory on which the court submitted the case, the objection should have been overruled. We think it clear, however, that the error was without prejudice. Defendant's counsel did in fact examine Falk on this subject. He testified that he did not know plaintiff was buying for himself but, as above indicated, he said that whether plaintiff bought himself or sold to another was of no concern to him. The negotiation with Falk after consummation of the agreement with defendant was by telegram and letter, which were received in evidence. Defendant's offer does not make it clear that he could have proved by the witness any further facts than were put in evi-

dence. In fact it seems quite apparent from Falk's testimony that he could not have done so.

Defendant assigns as error the refusal of the court to permit him to amend his answer so as to plead that plaintiff perpetrated a fraud on Falk. The motion to amend should probably have been granted. However, inasmuch as the evidence admissible under the amendment was received and the issue it would have raised was submitted to the jury, the refusal of the amendment could not prejudice the defendant.

4. It was proper to show that Falk did not pay plaintiff any commission on the sale. It had a tendency to corroborate the testimony of plaintiff as to the arrangement with defendant. Evidence as to the value of the land was likewise properly received. It may not have been of great probative value, but it was a collateral fact, having some tendency to corroborate the testimony of plaintiff as showing the reasonableness and probability of plaintiff's version of the negotiation between plaintiff and defendant. The reception of such testimony rests largely in the discretion of the trial court. Glassberg v. Olson, 89 Minn. 195, 94 N. W. 554; Dalby v. Lauritzen, 98 Minn. 75, 107 N. W. 826; Humphrey v. Monida & Yellowstone Stage Co. 115 Minn. 18, 131 N. W. 498. There was no abuse of discretion.

5. Defendant assigns as error the reception of "Exhibit D," a letter written by plaintiff to defendant making demand for the amount claimed, and stating the ground of his demand. This was properly received. Where a demand is made upon a party under such circumstances that he would naturally deny if he did not assent, the demand and failure to reply may be received as evidence in the nature of an admission tending to prove the justice of the demand. 1 Greenleaf, Ev. § 197, 2 Wigmore, Ev. § 1073; Murphey v. Gates, 81 Wis. 370, 51 N. W. 573.

6. It is claimed the court should grant a new trial on account of certain remarks of counsel as follows:

"You cannot make me believe that this man Hawbaker has acquired all these farms in Illinois, Iowa and Minnesota, and all his riches by the sweat of his brow. He is located in Watonwan county

until he can get the increase on his land, then he will sell out and go back to Illinois. He is not a part of Watonwan county."

Upon exception taken to these remarks the court directed counsel to confine his remarks to the evidence, and he desisted. The court in his charge directed the jury to disregard such matters as were mentioned by counsel in these remarks. The remarks were improper, but we cannot think they prejudiced the jury. We have not before us the context. The trial court, "with much better opportunity than we have, has decided, in refusing a new trial, that they did not prejudice. The record would have to show a decided probability of prejudice to justify us in reversing that decision. The case, as presented, does not call on us to do so." Johnson v. Chicago, B. & N. R. Co. 37 Minn. 519, 35 N. W. 438.

7. It is urged that the damages awarded are excessive. The verdict, as shown by the settled case, is for $3,331.71, and is excessive by about $200. The original verdict filed with the clerk has been returned to this court, and it is plainly for $3,131.71, an amount not excessive. The original verdict controls and will be regarded by this court as the true verdict. The verdict is one of the "papers properly filed with the clerk," is part of the record proper, and should have been excluded from the settled case. G. S. 1913, § 7831; Peach v. Reed, 87 Minn. 375, 92 N. W. 229.

Order affirmed.