## RAYMOND FORMANEK v. YORK E. LANGTON AND OTHERS.

134 N. W. (2d) 883.

April 15, 1965—No. 39,463.

*Rubenstein & Weisberg,* for appellant.
*MacLaughlin & Harstad,* for respondents Langton.
*Jerome V. Blatz,* for respondents Kopp.

THOMAS GALLAGHER, JUSTICE.

Action by Raymond Formanek for specific performance of an agreement dated October 20, 1962, for the sale of certain real property near Prior Lake in Scott County, against York E. Langton and Gerda L. Langton, his wife; and for a determination of the interest of defendants Roman Kopp and Dorothy Kopp, his wife, in the property.. In their answer the Langtons admitted that they had executed the document attached to the complaint, but alleged that this did not constitute their entire agreement with plaintiff. They denied that there had ever been a breach of the actual contract between them and plaintiff. The Kopps denied that the document attached to the complaint was a purchase agreement and asked dismissal of the action. This is an appeal from a judgment entered in favor of defendants based upon findings made after a trial on the merits.

The agreement attached to the complaint was executed by Raymond Formanek as purchaser, and York E. Langton and Gerda L. Langton, his wife, as owners and vendors of certain real property described therein. However, it is undisputed that simultaneously with execution of this instrument and as a part of the entire transaction, plaintiff and defendant York E. Langton also executed an instrument in writing as follows:

"The agreement whereby Ray Formanek agrees to purchase, and York Langton agrees to sell, property at Prior Lake, Minnesota, located in Section 2, Range 22, is made on the basis that Roman Kopp and wife will give a Quit Claim Deed on any interest that they may have in the property to be purchased."

The evidence disclosed that York E. Langton and Roman Kopp had purchased the premises from Raymond A. Blumberg and Anna M. Blumberg on September 1, 1961, under a contract for deed; that at that time a downpayment in the sum of $2,500 had been made thereon, of which sum $500 had been paid by Langton and $2,000 had been paid by Kopp; that at the request of Kopp, Langton was named as vendee in this contract because of Kopp's belief that Langton was in a better position to procure necessary additional financing for development of the property; that at that time Langton and Kopp orally agreed that any profits from its sale would be divided between them and that no such sale could be made by Langton without the approval of Kopp; that Kopp had then taken and thereafter remained in possession of the property and had leased to another a barn thereon; that in addition he had retained the contract for deed from the Blumbergs and the abstract of title to the property; that in the negotiations for sale Langton had disclosed to plaintiff that Kopp owned an interest in the property and that no sale could be made except upon Kopp's approval; and that thereafter plaintiff and Langton, simultaneously with their execution of their agreement of purchase, had executed the instrument above set forth which conditioned the sale upon the quitclaim deed's being obtained from Kopp and his wife.

The record further discloses that thereafter Kopp refused to approve the sale of the property to plaintiff as covered by this agreement and refused to execute and deliver the quitclaim deed required by the terms of the separate instrument; and that Langton disclosed this to plaintiff and returned to him his downpayment check for $1,000 on October 24, 1962, writing him as follows:

"I am enclosing your check for $1,000 on the Prior Lake property which you made as down payment.

"I have talked at length with Roman Kopp and his attorney, Jerome Blatz. Roman Kopp refuses to give a Quit Claim Deed on this property at Prior Lake, as he has changed his mind.

"Under the circumstances, therefore, I am returning your check and find myself unable to conclude the deal and in conformance with our agreement must cancel."

Upon cross-examination plaintiff, who had studied law for 3 years, admitted that he understood the nature and purpose of a quitclaim deed; that he understood that such a deed must relate to the conveyance of an interest in land and would have no bearing as to a real estate commission arising out of a sale of land. Based upon the evidence described, the trial court made findings that the purchase agreement entered into between plaintiff and defendants Langton was contingent upon obtaining the consent of defendant Roman Kopp; that the consent of Kopp to said purchase agreement was never obtained; and that plaintiff had failed to establish any claim of interest in or right or title to the premises involved herein.

It is plaintiff's contention here that because the agreement between Langton and Kopp with respect to the property involved was not in writing it would follow that Kopp had no interest therein; and accordingly that his refusal to sign the quitclaim deed did not relieve the Langtons of their obligation to convey the premises to him in accordance with the purchase agreement.

■ There are a number of reasons why the judgment of the trial court must be affirmed. It is clear that the agreement between plaintiff and Langton consisted of two separate instruments, simultaneously executed, and that neither could be considered separately from the other. Together they establish that the agreement for sale of the premises to plaintiff was contingent upon the performance of a condition precedent and was not to become effective until that condition had been performed. It is well settled that the performance of a condition upon which a contract for the sale of property is made contingent may be required by the vendor, even though performance of the condition is not essential to the transfer of the record title; and that the failure to obtain such performance serves to release the vendor from obliga-

tions under the contract. As stated in Windey v. North Star Farmers Mutual Ins. Co. 231 Minn. 279, 282, 43 N. W. (2d) 99, 101:

"* * * The contract for deed * * * was purely executory and the rights of the parties to the contract depended upon the happening of the conditions precedent, viz., the obtaining of the deeds from the adult owners and of the order of license of the probate court to sell the infant's interest, which had not then occurred. * * *

\* \* \* \* \*

"* * * [B]ecause the conditions precedent had not happened * * *, plaintiff had acquired at such time no title or interest in the land."

Likewise, in Hobart v. Kehoe, 110 Minn. 490, 492, 126 N. W. 66, 67, this court stated:

"It may be conceded, as the plaintiff claims, that the probate court of the county of Cumberland, Maine, could not authorize, by license or otherwise, the defendant to convey, in his discretion, land in Minnesota. It does not, however, follow from this concession that the condition is to be construed as expressing the intention of the parties that, in case a license to convey was not necessary as a matter of law, the condition should be considered as surplusage, as the plaintiff seems to claim. The proviso in question was a condition precedent, for by its express terms it called for the performance of the act therein named before the obligation to convey the land should become absolute. It can make no difference in this case whether the stipulated condition is essential or not, or whether it is material, for the defendant was under no obligations to enter into any contract with the plaintiff, and he had a right to name the conditions upon which he would do so. A right or interest in land which depends upon a condition precedent does not vest until or unless the condition is performed, although it is or becomes, for any reason, impossible of performance."

Further, the record does establish that Kopp had an interest in the property even though it had not been expressed in writing. It arose by virtue of his payment of $2,000 on the purchase price and was evidenced by his possession and control of the property, his leasing of a barn thereon, and his retention of the contract for deed and ab-

stract of title. In numerous decisions, this court has held that evidence of this kind is sufficient to establish an interest in real property, notwithstanding that a written conveyance, referred to in the statute of frauds, Minn. St. 513.04,[1] is absent. Camenker v. Greene, 251 Minn. 106, 86 N. W. (2d) 708; Johnson v. Quaal, 250 Minn. 154, 83 N. W. (2d) 796; Holste v. Baker, 223 Minn. 321, 26 N. W. (2d) 473; Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. (2d) 362, 166 A. L. R. 435; Biddle v. Whitmore, 134 Minn. 68, 158 N. W. 808. Likewise, it has been held that estoppel may preclude a party to an agreement from asserting the lack of a writing required by statute. Albachten v. Bradley, 212 Minn. 359, 3 N. W. (2d) 783. Further, it is extremely doubtful if a stranger to an oral agreement which does not comply with the statute of frauds, such as plaintiff here, could assert the statute in his favor. Ordinarily, such a right is reserved to a party to the agreement. Royal Realty Co. v. Levin, 244 Minn. 288, 69 N. W. (2d) 667; Scott v. Marquette Nat. Bank, 173 Minn. 225, 217 N. W. 136. Finally, it has repeatedly been held that an oral agreement to share profits derived from dealing with or selling land, purchase of which was made jointly by parties to the oral agreement, is binding upon such parties notwithstanding the statute of frauds. Nybladh v. Peoples State Bank, 247 Minn. 88, 76 N. W. (2d) 492; Bakke v. Keller, 220 Minn. 383, 19 N. W. (2d) 803; Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570; Sonnesyn v. Hawbaker, 127 Minn. 15, 148 N. W. 476; Simpson, Contracts, p. 193.

Affirmed.

---

[1] Minn. St. 513.04 provides: "No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the parties creating, granting, assigning, surrendering, or declaring the same, or by their lawful agent thereunto authorized by writing. This section shall not affect in any manner the power of a testator in the disposition of his real estate by will; nor prevent any trust from arising or being extinguished by implication or operation of law."