**Richard W. ANDERSON, Plaintiff,**

v.

**PROPERTY DEVELOPERS, INC., an Indiana corporation, and Ferris E. Traylor, Defendants.**

**Richard W. ANDERSON, Plaintiff,**

v.

**TWO RIVERS, INCORPORATED, a Tennessee corporation, and Ferris E. Traylor, Defendants.**

3–70–Civil–240, 3–70–Civil–241.

United States District Court, D. Minnesota, Third Division.

Jan. 31, 1974.

Israel Krawetz and James P. Miley, St. Paul, Minn., for plaintiff.

Joseph T. O'Neill and Jon R. Duckstad, O'Neill, Burke, O'Neill & Duckstad Ltd., St. Paul, Minn., for defendants.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

The issue in this bench tried case is whether plaintiff was engaged in a partnership or joint venture with defendants in the acquisition, development and sale of certain Hennepin County, Minnesota, property and thus entitled to a share of the profits.

Plaintiff Anderson is a Minnesota lawyer and CPA who also engages in acquisition and development of commercial and residential real estate. Defendant Traylor is an Indiana banker, investor and building constructor who engages in property acquisition and development in his own name and in that of separate corporations which he owns and controls, including the named corporate defendants.

The disputes which occasion this litigation are centered in two distinct, but intertwined, property developments in which the parties engaged starting in the year 1964:

(1) *"6700 Excelsior Boulevard"* is a tract of near Minneapolis suburban land, parts of which were subsequently sold and part of which now contains an of-

fice building. It is not now disputed that the parties were 50/50 partners in this venture but there is dispute as to an accounting between the parties.

(2) *"Anderson Lakes"* is an area of approximately 143 acres, consisting of three distinct tracts of 95 acres (Tierney Woods), 18 acres (Kalash property) and 20 acres (LeBeau Lake Bottom land), in a wooded, lake dotted suburban area some ten miles from downtown Minneapolis in the City of Bloomington, Minnesota. "Anderson Lakes" has been sold to the City of Bloomington for park purposes for approximately $700,000. It was acquired for approximately $260,000. Plaintiff claims to have a 50/50 (or at least a one-third) equity with defendant Two Rivers in this venture. Defendants deny it.

By Order dated November 26, 1973 the court consolidated the cases for trial and bifurcated the issues of (a) the merits of the partnership claims as to each of the developments, "6700 Excelsior Boulevard" and "Anderson Lakes," and (b) the accounting issue or issues.

Diversity jurisdiction is established. Trial was to the court January 3 through January 9, 1974. Oral testimony was furnished by four witnesses and the parties stipulated that the depositions of others could be received in lieu of their live testimony. Briefs have been filed and argument heard. Court and counsel have contemplated the submission of the accounting issues to a master.

As previously noted, it is not now disputed that the parties were 50/50 partners in "6700 Excelsior Boulevard" with defendant Traylor advancing the necessary funds to acquire the land and plaintiff responsible for developing the land and leasing the building, the partners to split the profits after defendant recovered all funds advanced.

We come to the merits of the partnership claim as it relates to "Anderson Lakes."

Plaintiff claims that on January 5, 1968 at Minneapolis, after showing him the "Anderson Lakes" property, Traylor expressed marked interest in acquiring it for development and told plaintiff to proceed with negotiations for its acquisition and said "we will handle this the same as 6700 Excelsior, fifty-fifty." Plaintiff says he accepted this offer and proceeded with plans for acquisition of the property and the evidence shows that he spent substantial time with property planners and Bloomington city officials and others looking toward acquisition, development and sale of the property.

Defendant emphatically denies agreeing with plaintiff on a 50/50 arrangement either on January 5, 1968 or at any other time. He does agree with plaintiff's testimony that the two met on June 4, 1968 in an airline lounge at the Chicago Airport and discussed their business relationship as it pertained to "Anderson Lakes." Both agree the purpose of the meeting was to discuss Traylor affording some assistance to plaintiff in his then pressing personal financial needs. It is not disputed that as a result of their conference Traylor paid plaintiff a total of $14,000, $10,000 a few days after their meeting and $1,000 a month for four months. Traylor testified this money was an advance on the future sale of "Anderson Lakes" to be deducted from plaintiff's interest in the venture, Traylor testified he agreed at the June 4, 1968 Chicago Airport meeting to give Anderson one-third interest in "Anderson Lakes" *but* provided the property was sold before February 1, 1969 and for at least $7,000 per acre. It was not sold before February 1969 for $7,000 per acre so Traylor contends plaintiff never did acquire even a one-third interest in the venture.

Plaintiff's version of the Chicago meeting is that Traylor said that some of his associates at Evansville, Indiana felt that plaintiff was getting too good a deal at 50/50 and that in view of the

prospect of future similar profitable relations with Traylor, plaintiff agreed to reduce his interest to one-third provided Traylor paid him $1,000 per month as a drawing until the property was sold. Plaintiff denies the one-third interest was conditioned upon sale before February 1 for $7,000 per acre. Plaintiff claims payment of the $1,000 per month was terminated after $14,000 was paid and that this had the legal effect of rescinding the agreement reducing his interest to one-third, thus entitling him to revert to his 50/50 interest.

■ From all of the evidence and the reasonable inferences to be drawn from it, I conclude that plaintiff has proved by the greater weight of the evidence that he has a one-third interest in "Anderson Lakes."

The basic issue is one of credibility of witnesses Anderson and Traylor, particularly as to what transpired at the meetings on January 5, 1968 and June 4, 1968. Anderson was more convincing, his demeanor and manner while testifying more impressive and his version of events more believable.

Plaintiff's claim is supported by other evidence in the record, particularly the testimony of Frank E. Donner, Trust Officer of an Indianapolis bank, Edgar C. Engelbrecht, one time associate of defendant Traylor, B. John Barry, an officer of American National Bank of St. Paul and by exhibits received in evidence.

It would be supererogatory to recite all the pertinent testimony and list all the significant exhibits. It is enough to highlight some.

Trust Officer Donner, a participant in, and well acquainted with the dealings in connection with both "6700 Excelsior" and "Anderson Lakes," said that plaintiff told him in March or April of 1968 that he had a 50/50 interest in "Anderson Lakes" after payment of expenses. He said he later talked to Traylor and that Traylor affirmed plaintiff's claim to this interest. In a memorandum to his bank's Trust Review Committee dated April 30, 1968, Donner wrote:

"Under Mr. Traylor's agreement with Mr. Anderson (plaintiff), after recovery of all expenses, including any losses in the sale of Fuqua stock to finance this below the price of $75 per common stock, Mr. Anderson receives 50% of the profit" (p. 16 of Donner deposition).

This is very persuasive evidence. There is every reason to believe, and no reason to disbelieve, this testimony. Donner was the responsible officer in charge of Traylor's trust for his children and had the obligation to assert all that Traylor, as agent for his children's trust, was entitled to receive from plaintiff.

Witness Engelbrecht testified that Traylor told him that Anderson (plaintiff) had a 50 percent equity in the Minneapolis developments (p. 19 of deposition). Plaintiff also told him that he had a 50 percent equity (p. 34 of deposition). Traylor told him that the $10,000 plus $1,000 per month paid as a result of the Chicago Airport meeting of June 4, 1968 was an advance on plaintiff's interest in the Minneapolis ventures (p. 44 of deposition). Traylor told him on other occasions that plaintiff had a 50 percent equity (p. 58 of deposition).

This testimony is persuasive but probably not as credible as that of Donner because Engelbrecht subsequently had a falling out with Traylor and sued Traylor over disputes about his interest in similar ventures.

Witness Barry's testimony was to the effect that he was told by both plaintiff and Traylor that plaintiff had an equity interest in "Anderson Lakes."

Under date of June 10, 1968 Mrs. Billie McKinley, Corporate Secretary of Property Developers, Inc., sent plaintiff the $10,000 check as a "drawing" on "any of the projects" in Minneapolis when settled (plaintiff's exhibit F–19).

Other evidence in the record, and the reasonable inferences to be drawn from it, supports plaintiff's claim; but there is no substantial evidence in support of Traylor's version of the relationship of the parties. A logical argument can be made that Anderson was being overcompensated with even a one-third interest in "Anderson Lakes" in view of the fact that defendants furnished all the financing and the property was not developed but sold to Bloomington, but that goes principally to the wisdom of Traylor making such a deal, not to the fact of his having done so. I am satisfied that the preponderance of the evidence supports the claims that:

(a) Plaintiff has a 50% equity in "6700 Excelsior Boulevard" after deducting all funds advanced by Traylor, and

(b) Plaintiff is entitled to a one-third interest in the profits from the sale of "Anderson Lakes" to the City of Bloomington, after deducting all funds advanced by Traylor including any loss occasioned by the sale of Fuqua stock in the children's trust below $75.00 per share.

█ Defendants' contention that the dealings are governed by the provisions of the Statute of Frauds relating to the sale of land or an interest in land, M.S. A. 513.01 et seq. is without merit. A parol joint venture agreement entered into for the purpose of carrying on the business of purchasing and selling real estate for speculation, the profits to be divided among the parties, may become effectual without a writing. Formanek v. Langton, 271 Minn. 59, 134 N.W.2d 883 (1965); Hammel v. Feigh, 143 Minn. 115, 173 N.W. 570 (1919); Sonnesyn v. Hawbaker, 127 Minn. 15, 148 N.W. 476 (1914).

The evidence satisfies the four requisites for a joint venture set out in Rehnberg v. Minnesota Homes, 236 Minn. 230, 52 N.W.2d 454.

Plaintiff promptly will submit suggested findings of fact, conclusions of law and order for judgment reflective of these expressions.

The parties are instructed to consult and submit their joint recommendation with reference to the appointment and compensation of a master.