Richard W. ANDERSON, Appellee,

v.

PROPERTY DEVELOPERS, INC., and Ferris E. Traylor, Appellants.

Richard W. ANDERSON, Appellee,

v.

TWO RIVERS, INCORPORATED, and Ferris E. Traylor, Appellants.

No. 76–1822.

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1977.

Decided May 10, 1977.

---

Joseph T. O'Neill, St. Paul, Minn., on brief, for appellants.

Israel E. Krawetz, St. Paul, Minn., on brief, for appellee.

Before GIBSON, Chief Judge, MATTHES, Senior Circuit Judge, and HENLEY, Circuit Judge.

GIBSON, Chief Judge.

This diversity case involves a dispute between two entrepeneurs over the proceeds from two separate real estate deals. Separate cases were filed but later consolidated for trial. Plaintiff Anderson claims that he was engaged in joint ventures with defendants for the acquisition, development and sale of certain real property in Minnesota and that he is entitled to a share of the profits of these joint ventures. The District Court [1] entered judgment on the merits for Anderson and submitted the case to a special master for an accounting to determine Anderson's shares of the profits. The trial court subsequently adopted the special master's accounting and entered judgment for Anderson in a total amount of $126,250.65 plus interest. Defendants appeal.

---

1. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota. The District Court opinion is reported at 370 F.Supp. 1205 (D.Minn.1974).

Plaintiff Anderson is an attorney licensed to practice law in Minnesota and a CPA. Defendant Traylor is an Indiana banker and investor. Both Anderson and Traylor engage in the acquisition and development of real estate. Traylor makes real estate investments in his own name and through defendant corporations, Two Rivers, Inc. and Property Developers, Inc. Two Rivers is a wholly owned subsidiary of Property Developers, which is owned by an irrevocable trust established by Traylor for his children.

At the instigation of Anderson in 1964, Traylor and his wife acquired title to a tract of land located in Hennepin County, Minnesota, and known as 6700 Excelsior Boulevard. Anderson made the earnest money deposit of $5,000 on this tract from his own funds. Although title was taken in Traylor's name, this acquisition is now conceded to have been made on a joint venture basis, with Traylor and Anderson being equal joint venturers for the development and ownership of the property. Under this agreement, which was manifested by a series of letters, Traylor was to advance the funds necessary for acquisition of the land, while Anderson bore the primary responsibility for developing and leasing a building to be constructed on the land. Upon Traylor's recovery of all funds advanced by him, title to an undivided one-half interest in the property was to be conveyed to Anderson. Traylor and his wife subsequently conveyed title to 6700 Excelsior Boulevard to Property Developers, which assumed Traylor's obligations under the joint venture agreement.

All bills accrued during the development and management of 6700 Excelsior Boulevard were to be forwarded to the Evansville, Indiana, office of Property Developers for payment. Similarly, all rental income was to be sent directly to Property Developers. Problems with non-payment of bills arose and at least two mechanics' liens were filed. After Property Developers consistently failed to pay bills, despite its receipt of rental income from the property, Anderson himself used rental income to pay bills. Anderson performed all of his duties under

the agreement, including those involving the development and leasing of the building constructed at 6700 Excelsior Boulevard, but he did not receive title to an undivided one-half interest in the property. Anderson then filed suit to establish his 50% equity interest in this property.

The trial court found that Anderson had a 50% equity interest in 6700 Excelsior Boulevard after deducting all funds advanced by Traylor. The parties disagreed as to what costs could properly be included in "all funds advanced" by Traylor. The accounting of the special master, adopted by the trial court, settled this dispute to Anderson's advantage and found an ultimate balance of $26,110.13 due him from the 6700 Excelsior Boulevard property.

The facts pertaining to the property known as Anderson Lakes are less clear. Despite their mutual expertise in real estate dealings, the parties chose not to enter a written agreement with regard to Anderson Lakes. In view of their polar positions on the existence and nature of an oral agreement over Anderson Lakes, the trial court acknowledged that "the basic issue is one of credibility of witnesses Anderson and Traylor" and resolved this issue in Anderson's favor because "Anderson was more convincing, his demeanor and manner while testifying more impressive and his version of the events more believable." *Anderson v. Property Developers, Inc.*, 370 F.Supp. 1205, 1207 (D.Minn.1974).

The trial court found that title to the separate tracts of land making up the Anderson Lakes property was acquired by Two Rivers in May, 1968, pursuant to an oral agreement between Anderson and Traylor-Two Rivers entered on January 5, 1968. This agreement, as found by the trial court, created a joint venture nearly identical to the 6700 Excelsior Boulevard joint venture: Traylor and Two Rivers were to advance the funds necessary to acquire the land, while Anderson was to be responsible for developing the land. Anderson would receive title to an undivided one-half interest in the property after Traylor and Two Riv-

ers recovered all the funds advanced for the acquisition of the property. It was further agreed that Two Rivers would borrow the funds necessary for the purchase of Anderson Lakes from a trust created by Traylor for the benefit of his children. In the event certain Fuqua stock held by the trust were sold to provide these funds, any loss to the trust resulting from sale of the stock at less than $75.00 per share would be recovered prior to a division of the profits. Nothing was said relative to the trust's receiving interest on this substantial advance.

The trial court found that this initial joint venture agreement was orally modified on June 4, 1968. Anderson agreed to reduce his interest in Anderson Lakes from one-half to one-third. Traylor and Two Rivers agreed to advance Anderson $1,000 per month, retroactive to January, 1968, until Anderson Lakes was sold. Anderson was then to repay the advances plus interest at 6½% per annum. Pursuant to this modified agreement, Anderson received total advances of $14,000.

By March, 1969, relations between Anderson and Traylor had deteriorated so severely that Traylor discontinued the $1,000 monthly advances, although Anderson Lakes had not yet been sold. Dissatisfied with Anderson's failure to obtain a buyer for the property at what he considered an acceptable price, Traylor himself took charge of the Anderson Lakes project. Using the Anderson Lakes property as collateral, Traylor obtained a $400,000 loan from the American National Bank and Trust Company of St. Paul in June, 1969. Anderson Lakes was subsequently sold to the City of Bloomington at a substantial profit over the original cost. Anderson received no part of the profit realized on this sale.

The trial court found that Anderson had performed all his obligations under his agreement with Two Rivers and Traylor and that he was, accordingly, "entitled to a one-third interest in the profits from the sale of Anderson Lakes to the City of Bloomington, after deducting all funds advanced by Traylor, including any loss occasioned by the sale of Fuqua stock in the children's trust below $75.00 per share." The parties disagree on the meaning of "all funds advanced" by Traylor. The special master, whose findings were adopted by the trial court, interpreted the agreement in Anderson's favor and found him entitled to a balance of $100,140.52 from the sale of Anderson Lakes.

### 6700 Excelsior Boulevard

Defendants do not deny the existence of the joint venture for 6700 Excelsior Boulevard found by the trial court. They do, however, challenge a number of the facts found by the special master which relate to funds advanced by Traylor and recoverable by him prior to any division of profits with Anderson. The special master's findings were adopted by the trial court and became, therefore, part of his findings of fact. They may not be disturbed on appeal unless they are clearly erroneous. Fed.R.Civ.P. 52; 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2615 (1971).

### Interest

Under the agreement found by the trial court, there was to be an even division of the profits derived from the 6700 Excelsior Boulevard property. The trial court concluded as a matter of law that in calculating profits, Traylor and Property Developers were entitled to deduct from the gross proceeds of 6700 Excelsior Boulevard all proper expenses of sale and all proper advances made in connection with the acquisition of the property and the construction of improvements on it. Traylor and Property Developers contend that they are entitled to deduct interest of $18,153.00 on the funds advanced by them for acquisition of the property and interest of $7,991.86 on the funds advanced by them for the construction of a building. Deductions for interest were disallowed by the special master and defendants challenge the propriety of these disallowances.

In finding an agreement allowing for the recovery of "all funds advanced", the trial court did not include interest as a recovera-

ble item.[2] Although the matter of interest presents considerable difficulty, a review of the record convinces us that the trial court's and special master's disallowances of interest deductions were not improper. The joint venture agreement, consisting of a series of letters between Anderson and Traylor's attorney, makes no reference to the assessment of recovery of interest. Despite Traylor's extensive experience in real estate transactions, he chose simply to use the vague term "all funds advanced" to denote the items recoverable by him prior to a division of profits. Moreover, the record shows that when, in June, 1968, Anderson learned that Traylor was attempting to assess interest, he immediately objected. Thus, the record supports the trial court's and master's findings that the joint venturers did not agree to an assessment of interest on the funds advanced by Traylor and Property Developers.

■ The interest sought by defendants is compensation for the use of their money. Under well settled Minnesota law, liability for interest of this variety is purely contractual and, accordingly, a person is not chargeable with such interest unless he has agreed to pay it. *Lund v. Larsen*, 222 Minn. 438, 24 N.W.2d 827 (1946). This principle indisputably applies to partnerships, *Tate v. Ballard*, 243 Minn. 353, 68 N.W.2d 261 (1954), and correlatively to joint ventures, for the rules and principles applicable to partnerships control the rights, duties and obligation of joint venturers. *Rehnberg v. Minnesota Homes, Inc.*, 236 Minn. 230, 52 N.W.2d 454 (1952). An earlier Minnesota case held:

> A [joint venturer] is not entitled to interest on money advanced in carrying out the [joint venture] purposes unless there is an agreement or an established usage to that effect.

*Riebel v. Mueller*, 177 Minn. 602, 225 N.W. 924 (1929). Clearly, no agreement in the instant case creates a basis for charging interest. Nor does a review of the record show an "established usage" on which an interest charge could be based. No evidence was offered to show that the assessment of interest was an established practice in real estate joint ventures in general. Rather, Traylor and Property Developers simply contend on appeal that it was their practice to charge interest on funds advanced. This was their first joint venture with Anderson. Under these circumstances, their silent and unilateral contemplation of interest can hardly be said to constitute an established usage between the parties. Accordingly, we conclude that Traylor and Property Developers are not entitled to deductions for interest on funds advanced for the acquisition of 6700 Excelsior Boulevard and for the construction of a building there.

### Overhead

■ Traylor and Property Developers contend that prior to a division of profits, they should be allowed to deduct overhead charges of "10% of gross rent for main office expenses" in 1969, 1970 and 1971. The trial court declined to include overhead as a deductible expense under the joint venture agreement. Deductions for overhead were disallowed by the special master.

The joint venture agreement covering 6700 Excelsior Boulevard makes no reference to overhead. Traylor and Property Developers ask us, nevertheless, to consider overhead an item of "funds advanced", apparently because it had previously been standard business procedure for Property Developers to charge 10% overhead. The record does not show that Traylor or Property Developers ever obtained Anderson's assent to such a charge. Considering that Anderson, too, incurred overhead expenses in managing the 6700 Excelsior Boulevard property, it is doubtful that he would have approved defendants' unilateral recovery of speculative overhead charges prior to a division of profits.[3] The silence of the joint

---

2. The trial court considered and rejected an amended conclusion of law proposed by defendants that would have entitled them to a reasonable sum for interest on the funds they provided.

3. The main office of Property Developers managed a number of projects in addition to 6700 Excelsior Boulevard during the period in question. Defendants offered no evidence to estab-

venture agreement as to overhead, when considered with the fact that both parties to the joint venture incurred overhead expenses, convinces us that the deductions sought by defendants for overhead charges were properly disallowed.

*Anderson Lakes*

█ Defendants contend that their relationship with Anderson involving Anderson Lakes did not constitute a joint venture. In order to establish a joint venture under Minnesota law, the evidence must show contribution, joint proprietorship and control, sharing of profits but not necessarily of losses and the existence of a contract, express or implied. *Rehnberg v. Minnesota Homes, Inc.*, 236 Minn. 230, 52 N.W.2d 454 (1952). The question of whether or not an enterprise constitutes a joint venture is one of fact. *Tate v. Knox*, 131 F.Supp. 514, 517 (D.Minn.1955); *Rehnberg v. Minnesota Homes, Inc., supra*, 236 Minn. at 234, 52 N.W.2d at 457. The trial court found that the four requisites for a joint venture set forth in *Rehnberg v. Minnesota Homes, supra*, had been established.

█ The trial court's finding of a joint venture under Minnesota law is supported by substantial evidence. Moreover, as we have previously noted, the crucial issue at trial concerned the credibility of Anderson and Traylor, for their versions of the Anderson Lakes deal were diametrically opposed. The trial court considered Anderson a more credible witness and its factual findings are consistent with Anderson's version of the Anderson Lakes transaction.[4] Our review of the record convinces us that the trial court's finding of a joint venture involving the Anderson Lakes property has substantial support in the record and cannot be held by us to be clearly erroneous.

Defendants alternatively contend that, if a joint venture in fact existed, its terms were substantially different from those found by the trial court. They allege that the first oral agreement concerning Anderson Lakes found by the trial court never existed and that the terms of the second oral agreement were vitally different from those found by the court. According to defendants, there was never a 50/50 agreement with Anderson on Anderson Lakes. They contend that the only agreement between the parties was reached on June 4, 1968, and that it provided for Anderson to receive advances of $1,000 per month until Anderson Lakes was sold and a one-third interest in Anderson Lakes if and only if the property were sold prior to February 1, 1969, for at least $7,000 per acre. Since Anderson Lakes was not sold by this date, they argue that Anderson never acquired a one-third interest in the property.

A careful consideration of the record persuades us that the trial court's findings on the terms of the Anderson Lakes joint venture agreement are not clearly erroneous. The record as a whole supports the agreement found by the trial court. We deem it sufficient here, however, to simply highlight the most probative evidence on this point aside from the testimony of the parties.

The deposition of Frank E. Donner, a trust officer of the bank which served as trustee for the Traylor children's trust was introduced into evidence at trial. Because the children's trust owned Property Developers, which in turn owned Two Rivers, Donner was well acquainted with, and in fact a participant in, transactions involving both 6700 Excelsior Boulevard and Anderson Lakes. Donner testified that in March or April 1968, Anderson informed him that he had a 50/50 interest in Anderson Lakes,

lish the amount, if any, of actual extra overhead expenses created by 6700 Excelsior Boulevard.

4. That the trial court had documentary evidence as well as oral testimony before it does not render the clearly erroneous standard of review inapplicable here, for it applies both to evaluations of conflicting oral testimony and to inferences drawn from documents and undisputed facts. *United States v. United States Gypsum Co.*, 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Cole v. Neaf*, 334 F.2d 326, 329 (8th Cir. 1964); Fed.R.Civ.P. 52(a).

after payment of expenses. Donner also testified that, in a later conversation with Traylor, Traylor affirmed the existence of the interest Anderson had previously claimed. Moreover, Donner wrote a memorandum to his bank's Trust Review Committee dated April 30, 1968, which stated:

Under Mr. Traylor's agreement with Mr. Anderson, after recovery of all expenses, including any losses in the sale of Fuqua stock to finance this below the price of $75 per common stock, Mr. Anderson receives 50% of the profit.

We agree with the trial court that this is extremely persuasive evidence, particularly when we take into account Donner's position as a trust officer for a trust established by Traylor.

The deposition of Edgar C. Engelbrecht, a former associate of Traylor's in ventures similar to those at issue here, was introduced into evidence. Engelbrecht testified that both Anderson and Traylor had told him that Anderson had a 50% interest in the Minneapolis area projects. B. John Barry, an officer of the American National Bank of St. Paul who was instrumental in the negotiation of that bank's $400,000 loan to Traylor, also testified that both Anderson and Traylor had informed him that Anderson had an equity interest in Anderson Lakes. Another persuasive item of evidence is a letter, dated June 10, 1968, from Property Developers, Inc. to Anderson, which states: "Enclosed is a check for $10,-000.00 to be charged against the profits from your projects in Minneapolis. * * * At the time of settlement of the project, you will be charged interest on this draw at the rate of six and one-half percent." After having considered this evidence and the record as a whole, we are convinced that the trial court's findings pertaining to the terms of the Anderson Lakes joint venture agreement find substantial support in the record and certainly are not clearly erroneous.

■ Defendants next contend that any oral agreement they may have had with Anderson was for the creation of an interest in real property and was, accordingly, invalid under the Statute of Frauds. That portion of the Minnesota Statute of Frauds relied upon by defendants, Minn.Stat.Ann. § 513.04 (West 1945), bars the oral creation of an interest in land. Under Minnesota case law, however, oral partnership or joint venture agreements wherein the parties undertake to purchase and resell land for joint profit are deemed to fall outside the purview of the Statute of Frauds. *Formanek v. Langton*, 271 Minn. 59, 134 N.W.2d 883 (1965); *Nybladh v. Peoples State Bank of Warren*, 247 Minn. 88, 76 N.W.2d 492 (1956). *Hammel v. Feigh*, 143 Minn. 115, 173 N.W. 570 (1919); *Sonnesyn v. Hawbaker*, 127 Minn. 15, 148 N.W. 476 (1914). The trial court, having found the existence of a joint venture under Minnesota law, concluded that the Minnesota Statute of Frauds did not bar Anderson's interest in Anderson Lakes. We are in complete agreement with the trial court. The evidence shows that the parties orally entered a joint venture for the purchase, development and resale of real property. It is the well settled law of Minnesota that agreements of this nature are not subject to the Statute of Frauds. Accordingly, Anderson's interest in Anderson Lakes is not barred because of its oral origin.

■ Defendants challenge several aspects of the special master's accounting as it relates to Anderson Lakes. Under the joint venture agreement found by the trial court, Anderson was entitled to one-third of the profits derived from Anderson Lakes. The trial court concluded as a matter of law that in calculating profits, Traylor and Two Rivers were entitled to deduct the following items from the gross proceeds of the sale or disposition of Anderson Lakes: all proper expenses of sale, all proper advances made by defendants in connection with the acquisition and development of the property and, to the extent Fuqua stock from the Traylor children's trust was sold to provide funds for the purchase of Anderson Lakes, any loss to the trust resulting from the sale of the stock at less than $75.00 per share.

### Loss on Fuqua Stock

The parties agree that the loss on the sale of Fuqua stock was $30,217.60. The special master read the trial court's conclusion of law on the Fuqua stock as requiring that the $30,217.60 loss be taken "off the top" of gross proceeds prior to a division of profits. Defendants contend that the loss should not be taken into consideration in calculating profits. Rather, they urge that after profits are calculated, they should receive a credit of $30,217.60.

After considering the evidence, the trial court concluded that the parties agreed to allow defendants to recover any loss on Fuqua stock in the same manner that they recovered other expenses incurred in acquiring the property, namely by deducting the loss from gross proceeds. Nothing defendants have urged on appeal persuades us that this conclusion, which was implemented by the special master in his accounting, was incorrect.

### American National Bank Charges

Using the Anderson Lakes property as collateral, Traylor obtained a $400,000 loan from the American National Bank and Trust Company of St. Paul in June, 1969. Total expenses of $162,928.99 were incurred in obtaining this loan.[5] Anderson took no part in negotiations for this loan, although he did furnish certain documents necessary for the loan upon the bank's and Traylor's requests. There is, in fact, evidence that Traylor affirmatively attempted to keep Anderson uninformed and out of the loan negotiations. The proceeds of this loan, which were forwarded to the Evansville, Indiana, office of Property Developers, were earmarked for an existing real estate operation that Property Developers was then involved with in Tennessee. The proceeds of the loan were not used to repay the children's trust for the money it had loaned to Property Developers for the acquisition of Anderson Lakes. If they had been, a different result would probably be mandated.

Defendants contend that the expenses incurred in obtaining the American National Bank loan should have been deducted from gross proceeds prior to a division of profits. The special master, however, declined to allow this deduction. He found that defendants had failed to show that any part of the $400,000 loan was used in the purchase of Anderson Lakes or to repay the children's trust for the money it had provided to Two Rivers for the acquisition of Anderson Lakes. Furthermore, there was no showing that Anderson had taken an active part in negotiations for this loan.

Ordinarily, interest expense would be considered a part of the cost of carrying the joint venture project to its fruition. The joint venturers would supply limited equity capital in the varying amounts they had agreed upon and then borrow, in some form, the balance of capital necessary to carry on the venture. The interest charge on this type of financing would be a proper charge to the cost of the venture to be borne proportionately by the parties according to their respective shares in the venture. This division of interest costs would follow logically from the well settled principle that persons who join joint ventures usually share the burdens as well as the gains of the enterprise. Thus, in many factual situations, an equitable obligation to pay interest could arise.

In view of the factual findings of the District Court, however, it would be improper at this juncture for us to find and impose an equitable obligation to pay interest on the funds supplied by Traylor from the children's trust. One difficulty here is that the present factual situation does not fit the pattern of the usual joint venture enterprise. Traylor, who was to furnish the equity financing, also furnished the total capital financing of $268,000 for the purchase of Anderson Lakes. This was done by drawing an advance from his children's trust without any specific agreement that

---

5. Five separate items of expense were involved: (1) interest of $35,848.45; (2) a 25% share of gross profit of $71,966.95; (3) interest of $15,288.60; (4) interest of $19,824.99; (5) closing costs of $20,000.00.

the trust was to receive interest. Moreover, the parties and the court are again hampered by the lack of any written agreement or memorandum of understanding respecting the individual obligations of the joint venturers to pay or share interest expenses.

We do have some difficulty in not imposing an equitable interest charge in favor of the trust against the entire joint venture, for Anderson is being overly benefitted while the Traylor children's trust is being penalized by not receiving interest on this substantial advance. It appears that Traylor furnished more than the equity capital; in fact he furnished all the capital necessary for the purchase of Anderson Lakes. However, in view of the peculiar factual context of this case, we cannot find the trial court's determination with regard to interest clearly erroneous, for Traylor has been unable to show that the trust was to receive interest on this substantial loan or that the $400,000 loan from the American National Bank was a take-out loan contractually consented to by the parties or necessary to the furtherance of the joint venture.

*Equitable Relief*

Finally, defendants contend that Anderson is not entitled to equitable relief on either 6700 Excelsior Boulevard or Anderson Lakes because certain of his actions relating to 6700 Excelsior Boulevard were undertaken with unclean hands. The crux of this contention involves Anderson's endorsement of certain rental checks payable to Property Developers as "Property Developers by Richard W. Anderson, Vice President", although Anderson never held the position of vice-president of Property Developers. The evidence shows that the checks signed by Anderson as vice-president of Property Developers were used to pay outstanding bills on 6700 Excelsior Boulevard which defendants had repeatedly failed to pay despite their receipt of the rental checks from that property. Under these circumstances we do not consider Anderson's endorsement or use of the rental checks from 6700 Excelsior Boulevard un-

clean behavior rendering him ineligible for equitable relief.

Affirmed.