FRANKLIN AUTO BODY COMPANY,
et al., Appellants,

v.

Franklin M. WICKER, et al., Citizens
State Bank of St. Louis Park,
Respondents.

No. C8–87–903.

Court of Appeals of Minnesota.

Oct. 27, 1987.

William R. Baumeister, North St. Paul, for Franklin Auto Body Co., et al.

Larry B. Guthrie, Philip T. Colton, Maun, Green, Hayes, Simon, Johanneson and Brehl, Bloomington, for Franklin M. Wicker, et al.

Charles R. Carmichael, Joseph M. Paiement, Arnold & McDowell, Minneapolis, for Citizens State Bank of St. Louis Park.

Heard, considered and decided by LANSING, P.J.; and NIERENGARTEN and LOMMEN,* JJ.

## OPINION

A. PAUL LOMMEN, Judge.

Robert Wicker appeals the dismissal of his claims on summary judgment. The trial court found the claims barred by the statute of limitations and the statute of frauds. We affirm.

## FACTS

Appellant Robert Wicker brought two actions in July, 1985; one in district court for breach of contract, and one in county court for conversion. Respondent Franklin Wicker moved for consolidation, summary judgment, and costs. The motions were heard on March 26, 1987, and granted on April 8, 1987. Robert Wicker appeals the dismissal of his actions, but does not challenge the other actions of the trial court.

When their mother died in 1975, Robert and Franklin Wicker reached a settlement concerning nine properties. This dispute centers around two of those properties; the "Cherokee" property, and the "Linden" property. Respondent Citizens State Bank of St. Louis Park ("bank") held senior mortgages on both properties. Franklin held junior mortgages on both properties. The bank foreclosed early in 1985.

### The Conversion Action

Robert claims that Franklin and the bank converted Robert's personal property which was stored at the Cherokee property. Robert served Franklin with a complaint on July 3, 1985. Robert served the bank on July 8, 1985. Acting *pro se*, Robert stated in his complaints that

> prior to the 1st day of July, 1979, but after the 18th day of May, 1979, the above named defendants converted personal property and records belonging to the above named plaintiffs to their own use.

In his signed affidavit dated April 6, 1987, Robert states:

> On information and belief, Franklin Wicker turned over the key to 980 Cherokee to the bank on or before May 18, 1979, while plaintiffs' equipment, tools and records remained inside. Franklin Wicker then put the bank in contact with Dick Rasmussen, an interested buyer. Before completion of the sale to Rasmussen on July 1, 1979, affiant sought to recover his property, but could not gain access to the building. Upon sale, plaintiffs' property was converted * * *.

Robert later retained an attorney, who stated at oral argument that when Cherokee went into foreclosure, Robert Wicker

> made several attempts to get his way into that property to get his personal property back, and when the property was eventually sold, at that point the conversion would have occurred.

The trial court found this claim was barred by the statute of limitation.

### The Contract Action

The dispute surrounding the Linden property involves an alleged oral contract between Robert and Franklin. On July 3, 1985, Robert served a *pro se* complaint which laid out the terms and purpose of the alleged agreement:

> That on or about the middle of December, 1978, the above named defendant, Franklin M. Wicker presented to the above named plaintiffs, that if the plain-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

tiffs would furnish all real properties owned by The Franklin Auto Body Company, a Minnesota corporation, and mortgaged to the Citizens State Bank of St. Louis Park, Minnesota, and to either the estate of Florence R. Wicker, or Franklin M. Wicker, as the sole beneficiary of the estate of Florence R. Wicker, that the above named defendant, Franklin M. Wicker would furnish the capital in the form of money to redeem all the above mentioned properties which were involved in a foreclosure action by the said Citizens State Bank of St. Louis Park, Minnesota.

Robert further stated "as the result of the plaintiffs' furnishing the real property," Franklin agreed to pay Robert "a sum equal to 50% of the net profit of the sales of those above-mentioned real properties." Robert's attorney stated that the purpose of the agreement was to

> preserve Robert Wicker's equity in the property. This was done through this oral partnership agreement whereby Robert Wicker would provide his interest in the land, basically compromising his redemption rights under the law * * *.

Robert specifically claims that his share of the profit was due upon the 1985 sale of the last redeemed property; the Linden property.

On summary judgment motion, the trial court dismissed this claim finding it was barred by the statute of frauds.

### ISSUES

1. Did the trial court err in concluding the conversion claim was time-barred?

2. Did the trial court properly grant summary judgment on its own motion?

3. Is the alleged oral agreement to transfer an interest in land within the statute of frauds and therefore unenforceable in the absence of a writing?

### ANALYSIS

■ On review of summary judgment, the court must first determine whether there are genuine issues of fact, and then whether the trial court correctly applied the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The court must view the evidence in the light most favorable to the party who lost the motion below. *See Hauser v. Mealey*, 263 N.W.2d 803, 805 n. 1 (Minn.1978).

### I.

■ A party must bring an action within six years "[f]or taking, detaining or injuring personal property * * *." Minn.Stat. § 541.05, subd. 1(4) (1978). The statute of limitations runs from the time an action can be commenced. *Leisure Dynamics, Inc. v. Falstaff Brewing Corp.*, 298 N.W.2d 33, 37 (Minn.1980). The courts have no power to extend or modify limitations set by statute. *Johnson v. Winthrop Laboratories*, 291 Minn. 145, 151, 190 N.W.2d 77, 81 (1977). In the absence of fraud, ignorance of the existence of a cause of action does not toll the statute of limitations. *Id.*

> To constitute conversion, there must be an exercise of dominion over the goods which is inconsistent with and in repudiation of the owner's right to the goods or some act done which destroys or changes their character or deprives the owner of possession permanently or for an indefinite length of time.

*Hildegarde, Inc. v. Wright*, 244 Minn. 410, 413, 70 N.W.2d 257, 259 (1955). "Professor Prosser has described the 'gist of conversion' as an interference with the plaintiff's right to control his property." *Inland Construction Corp. v. Continental Casualty Co.*, 258 N.W.2d 881, 884 (Minn.1977) (citation omitted). "*Any* distinct act of dominion wrongfully exerted over one's property, in denial of his right, or inconsistent with it, is a conversion." *McDonald v. Bayha*, 93 Minn. 139, 141, 100 N.W. 679, 680 (1904) (emphasis added).

Robert served Franklin with a complaint on July 3, 1985, alleging conversion of personal property, and he served the bank on July 8, 1985. Counting backward, Robert's action must have accrued on or after July 3, 1979, for the complaint to be timely with respect to Franklin, and on or after July 8, 1979, with respect to the bank.

Robert's complaint fails to state a claim for conversion because it states the conversion occurred "on or before July 1, 1979." Under Minn.Stat. § 541.05, a conversion action commenced after July 1, 1985, would be barred. Robert served the complaints on July 3, and July 8, 1985. Accordingly, by the very terms of the complaint, the cause of action is stale.

A court will not modify ordinary rules and procedures because a *pro se* party lacks the skills and knowledge of an attorney. *Gruenhagen v. Larson*, 310 Minn. 454, 460, 246 N.W.2d 565, 569 (1976). While all courts provide some latitude and consideration to persons appearing *pro se,* this court cannot permit the bending of rules and requirements. *Liptak v. State, ex rel. City of New Hope*, 340 N.W.2d 366, 367 (Minn.Ct.App.1983). Despite the terms of Robert's complaint, the trial court allowed Robert to offer evidence purporting to show the conversion occurred as late as July 13, 1979. Robert attempts to tie the conversion to the sale of the property. Sale of property certainly can constitute conversion, but conversion may occur when the possessor exercises *any* act of dominion contrary to the rights of the owner.

Robert's own version of the story indicates he knew the door was locked as early as May 18, 1979, and he tried but could not recover the property. Locking Robert out of the building so that Robert could not retrieve his property was a conversion. Because facts put forth by Robert himself establish the conversion took place before July 3, 1979, the claim is time barred.

## II.

A trial court has inherent authority to grant summary judgment on its own motion when there remain no genuine issues of material fact and one of the parties deserves judgment as a matter of law. *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 280, 230 N.W.2d 588, 591–92 (1975). The court in *Del Hayes* applied several factors in considering whether the appellant was prejudiced by the trial court's sua sponte action. Finding no prejudice in that case, the supreme court affirmed the sua sponte summary judgment.

Robert argues that summary judgment for the bank was improper since the bank neither answered his complaint, nor moved for summary judgment. At oral argument Robert's attorney argued that had the bank answered, asserting the statute of limitations as a defense, Robert would have had the "opportunity to amend the complaint to show the later date of the conversion."

The bank's failure to answer could not have prejudiced Robert. Franklin asserted the statute of limitations in his answer, giving notice to Robert of the limitations problem. It is difficult to conceive how he could have responded differently since the claim against Franklin was exactly the same as the claim against the bank. Furthermore, Robert's own versions of the facts establish that the conversion took place more than six years prior to the service of the complaints.

## III.

No estate or interest in land * * * shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing * * *.

Minn.Stat. § 513.04 (1978). Significantly, the statute covers mere interests in land as well as estates. The word interest is broad enough to include "any right, title, or estate in, or lien upon, real estate." *Hatlestad v. Mutual Trust Life Insurance Co.,* 197 Minn. 640, 643–44, 268 N.W. 665, 667 (1936) (quoting, *Ormsby v. Ottman*, 85 F. 492, 497 (C.C.D.Neb.1898)). However, an oral agreement to carry on "the business of purchasing and selling real estate for speculation, the profits to be divided among the parties, may become effectual without a writing." *Anderson v. Property Developers, Inc.*, 370 F.Supp. 1205, 1208 (D.Minn.1974), *aff'd,* 555 F.2d 648 (8th Cir. 1977); *Sonnesyn v. Hawbaker*, 127 Minn. 15, 18, 148 N.W. 476, 477 (1914). Robert's reliance on *Sonnesyn* is misplaced. In *Sonnesyn,* a jury determined the parties

orally agreed defendant would supply capital and plaintiff would buy and sell property, each taking half the profits. The court reasoned the agreement created a joint venture for mutual benefit, not an interest in land. Accordingly, the court enforced the contract despite the absence of a writing. Also, in *Anderson*, the court found the defendant "advanc[ed] the necessary funds to acquire the land and the plaintiff [was] responsible for developing the land * * *." *Anderson* at 1206.

Taking Robert's facts as true, Robert and Franklin reached a different type of agreement in this case. Robert's attorney stated at oral argument the purpose of the agreement was "to protect Robert's equity in the property." Further, Robert's attorney argued Robert "would provide his interest in the land, basically compromising his redemption rights * * *."

In *Sonnesyn* and *Anderson*, the parties formed an agreement to combine capital and services for the purpose of speculating in realty. Here, Franklin contributed capital and Robert contributed his redemption rights in real property for the purpose of protecting an interest in real estate. The latter agreement involves an exchange or merging of an interest of land creating a new interest, while the former agreement involves a combination of money and service. Robert's agreement embraces an interest in land, bringing it within the statute of frauds. In the absence of a writing, the agreement is unenforceable.

### DECISION

Affirmed.